**UNITED STATES of America,
Plaintiff-Appellee,
v.
Oscar Ramos QUEZADA,
Defendant-Appellant.**

No. 84–1097.

United States Court of Appeals,
Fifth Circuit.

Feb. 20, 1985.

Rehearing and Rehearing En Banc
Denied March 20, 1985.

Lucien B. Campbell, Federal Public Defender, Evelina Ortega, Asst. Federal Public Defender, El Paso, Tex., for defendant-appellant.

Edward C. Prado, U.S. Atty., Sidney Powell, Asst. U.S. Atty., San Antonio, Tex., for plaintiff-appellee.

Before BROWN, TATE, and HIGGINBOTHAM, Circuit Judges.

JOHN R. BROWN, Circuit Judge:

In this appeal from a conviction under 8 U.S.C. § 1326 for illegal reentry after deportation, appellant challenges the admission of certain evidence at his bench trial. We review the proceedings below, find that properly admitted evidence sufficiently supports the conviction, and affirm.

*Background*

Appellant Oscar Ramos Quezada, an illegal alien, was deported from this country on April 25, 1982, pursuant to a warrant of deportation (Form I–205) issued by the United States Immigration and Naturalization Service (INS). Seven months later, on November 17, 1983, a Border Patrol officer arrested Quezada at the El Paso County Jail, where he was incarcerated on a public intoxication charge. Quezada was subsequently indicted by a federal grand jury for illegally reentering the country after having been previously arrested and deported, in violation of 8 U.S.C. § 1326.[1] After a bench trial,[2] he was convicted and sentenced to a prison term of two years, all but six months of which were suspended in lieu of supervised probation.

At trial, the principal part of the government's case was devoted to proving that Quezada had been "deported and arrested"[3] as required for conviction under the statute. In order to establish these statutory requisites, the government called as a witness Border Patrol Agent David Meshirer. Agent Meshirer first testified that he had been designated the custodian of appellant's immigration file.[4] The government then used the witness to introduce its exhibits.

Two exhibits are of particular importance in this appeal. The first is INS Form I–205, the warrant of deportation which authorized the deportation of appellant. The second, INS Form I–294, is a letter to appellant in his native language, warning him of the penalties for illegal reentry after deportation. Both exhibits were admitted into evidence over appellant's objections.

The testimony of Agent Meshirer also figures prominently in this appeal. His testimony described the use and function of the INS forms put in evidence. First, he explained that on the back of Form I–205 are spaces to be filled out by the deporting officer, as well as a space for the thumbprint of the deportee. Agent Meshirer also observed that the back of Form I–205 reflected that appellant had been deported on April 25, 1982, and that this deportation had been witnessed by an immigration officer whose signature appeared on the exhibit. Finally, he pointed out a thumbprint on the back of the exhibit, which subsequent testimony established to be that of appellant.[5]

Agent Meshirer next testified as to the normal procedure followed in executing warrants of deportation. He stated that when a person has been ordered deported, an immigration officer will pick up the deportee, fill in the blanks on the back of the warrant, and sign the warrant as having witnessed the departure. He also testified that in the course of a normal deportation, the deportee's right thumbprint is taken. As to Form I–294, the letter informing the deportee of the penalties for illegal reentry, Agent Meshirer observed that it is given to the deportee along with a copy of

---

1. § 1326. Reentry of deported alien
   Any alien who—
   (1) has been arrested and deported or excluded and deported, and thereafter
   (2) enters, attempts to enter, or is at any time found in, the United States, unless (A) prior to his reembarkation at a place outside the United States or his application for admission from foreign contiguous territory, the Attorney General has expressly consented to such alien's reapplying for admission; or (B) with respect to an alien previously excluded and deported, unless such alien shall establish that he was not required to establish such advance consent under this chapter or any prior Act,
   shall be guilty of a felony, and upon conviction thereof, be punished by imprisonment of

not more than two years, or by a fine of not more than $1,000 or both.

2. Appellant waived his right to trial by jury. R., p. 11.

3. *See infra,* note 6 and accompanying text.

4. In an apparent attempt to bolster the contention of lack of proper authentication, appellant objected to Meshirer's custodial status at trial, but does not raise that objection here.

5. The government subsequently called as an expert witness a detective from the Identification and Records Division of the El Paso Police Department. This witness testified, without objection, that the thumbprint on the form was that of appellant.

the warrant of deportation. Thus, according to this testimony, the deported individual is fully apprised of the fact of his deportation, and that he is subject to criminal penalties for illegal reentry.

On cross-examination, appellant's counsel first focused on an apparent irregularity in the manner in which the warrant of deportation had been filled out in this case. Along with the other information on the back of the warrant, there is a space for the signature of the officer executing the warrant. Appellant's cross-examination established that, while the other information on the back of the warrant had been supplied, there was no signature from an executing officer.[6]

Next, appellant's counsel examined Agent Meshirer on the process of deportation. As the witness was questioned on the procedure followed in executing warrants of deportation, the following colloquy occurred:

Q. Okay. So then have you ever executed a warrant?

A. No, sir; not a Warrant of Deportation.

Q. So you have no personal knowledge of actually how it's done, do you?

A. The knowledge I have is what I have been told by detention officers.

Q. All right. So that any testimony that you have given us as to the procedure is based simply upon what other people have told you outside of Court, is that correct?

A. Based on the normal rule of things and the normal processes of deportation.

Q. You have never seen it done, have you?

A. But I haven't been there personally and personally deported a person and executed this warrant.

Q. All right.

Trial Transcript at p. 24. Thus it was revealed that Agent Meshirer had never actually executed a warrant of deportation. Appellant's hearsay objections to the testimony were overruled, and this appeal followed.

### Discussion

Appellant urges that the evidence below was insufficient to prove the "arrest" necessary for prosecution under 8 U.S.C. § 1326, as that term has been interpreted by this court. In *United States v. Wong Kim Bo*, 466 F.2d 1298 (5th Cir.1972) *rehearing denied*, 472 F.2d 720 (5th Cir. 1972), we discussed that term as it fits into the scheme of the statute in question. First, we observed that there are five elements which the government must prove in order to obtain a conviction for illegal reentry after deportation: [i] that defendant was an alien; [ii] that he was "arrested" and [iii] "deported" as those terms are contemplated by the statute; [iv] that he was subsequently found within this country and [v] that he did not have consent from the Attorney General to reapply for admission. *Id.* at 1303.[7]

We next turned to an analysis of the "arrest" requirement. After examining the legislative and Congressional purpose underlying the Act, we concluded that an "arrest" under the statute is accomplished by service on the alien of the warrant of deportation, thus providing the requisite notice to trigger criminal sanctions for illegal reentry thereafter. *Id.* at 1304–05. This notice is critical, we observed, for it insures that criminal sanctions are not imposed for reentry where the alien does not know that he has previously been officially deported. *Id.* at 1304.

The argument presented on appeal is that the government failed to prove that appellant was actually served with a warrant of deportation issued by INS. This

---

6. As stated previously, the warrant did contain the signature of the immigration officer witnessing appellant's departure. The separate line for signature of the officer executing the warrant, presumably the same officer, was not signed.

7. Of these five elements, appellant challenges only the second, whether or not he was properly "arrested."

argument implicates important questions respecting the use of public documents in criminal proceedings, and the means of proving the customary practice of a governmental agency.

### Documentary Evidence

Initially, our attention is drawn to the question of the admissibility of INS Form I–205, the warrant of deportation. This document is crucial to the government's case, as it contains virtually all of the information proving appellant's prior arrest and deportation. Thus is implicated F.R.Evid. 803(8)(B), the public records exception to the hearsay rule, which provides as follows:

Rule 803. Hearsay Exceptions: Availability of Declarant Immaterial

The following are not excluded by the hearsay rule, even though the declarant is available as a witness:

\* \* \* \* \* \*

(8) Public records and reports. Records, reports, statements, or data compilations, in any form, of public offices or agencies setting forth ... (B) matters observed pursuant to duty imposed by law as to which matters there was a duty to report, excluding, however, in criminal cases matters observed by police officers and other law enforcement personnel.

Two principal reasons underlie this exception to the general rule excluding hearsay:[8] the presumed trustworthiness of public documents prepared in the discharge of official functions, and the necessity of using such documents, due to the likelihood that a public official would have no independent memory of a particular action or entry where his duties require the constant repetition of routine tasks. *See generally,* 4 D. Louisell and C. Mueller, Federal Evidence, Public Records § 454.

Despite this policy favoring the admissibility of public records, Congress was also obviously concerned about the use of such documents in criminal cases. In an apparent attempt to avoid a collision between the hearsay rule and the confrontation clause of the Sixth Amendment, Congress excluded from the public records exception "in criminal cases matters observed by police officers and other law enforcement personnel...." Rule 803(8)(B). In so doing, however, Congress did not make clear whether the Rule was designed to exclude all reports made by a government employee which are offered against a criminal defendant, or whether only certain types of reports were intended to be excluded.

While some courts have inflexibly applied the Rule 803(8)(B) proscription to all law enforcement records in criminal cases, *see, e.g., United States v. Oates,* 560 F.2d 45, 83–84 (2d Cir.1977), we are not persuaded that such a narrow application of the rule is warranted here.[9] The law enforcement exception in Rule 803(8)(B) is based in part on the presumed unreliability of observations made by law enforcement officials at the scene of a crime, or in the course of investigating a crime:

[o]stensibly, the reason for this exclusion is that observations by police officers at the scene of the crime or the apprehension of the defendant were not as reliable as observations by public officials in other cases because of the adversarial nature of the confrontation between the

---

**8.** We observe that, unlike statements admissible as non-hearsay under F.R.Evid. 801(d), statements falling within the exceptions of Rules 803 and 804 are admissible, but are nevertheless hearsay.

**9.** While we cited *Oates* with approval in *United States v. Cain,* 615 F.2d 380 (5th Cir.1980), that case is not contrary to our decision today. First, we cited *Oates* only for the proposition that a document inadmissible under Rule 803(8)(B) may not be received in evidence mere-

ly because it satisfies Rule 803(6), the exception for business records. *Id.* at 382. Further, unlike the case here, the public record at issue in *Cain* reported actual criminal activity on the part of the defendant. Finally, the *Cain* court apparently was not faced with a situation in which the very number of cases handled by the government agency made reliance on such records an administrative and evidentiary necessity. *See infra,* note 9 and accompanying text.

police and the defendant in criminal cases.

Senate Report No. 1277, 93d Cong.2d Sess., *reprinted in* [1974] U.S.Code Cong. & Ad. News 7051, 7064. Thus, a number of courts have drawn a distinction for purposes of Rule 803(8)(B) between law enforcement reports prepared in a routine, non-adversarial setting, and those resulting from the arguably more subjective endeavor of investigating a crime and evaluating the results of that investigation. *See, e.g., United States v. Orozco,* 590 F.2d 789, 793–94 (9th Cir.1979) (admitting computer records of license plates on cars crossing the border due to non-adversarial setting in which information was gathered) *cert. denied,* 439 U.S. 1049, 99 S.Ct. 728, 58 L.Ed.2d 709 (1978); *United States v. Union Nacional De Trabajadores,* 576 F.2d 388, 390–91 (1st Cir.1978) (admitting Marshal's return of service); *United States v. Grady,* 544 F.2d 598 (2d Cir.1976) (admitting reports on firearms serial numbers for Northern Ireland law enforcement agency on basis that they were records of a routine function).

Under this analysis, a warrant of deportation was deemed properly admissible in a § 1326 action in *United States v. Hernandez-Rojas,* 617 F.2d 533 (9th Cir.1980), *cert. denied,* 449 U.S. 864, 101 S.Ct. 170, 66 L.Ed.2d 81 (1980). The Ninth Circuit there concluded that the notations on the warrant indicating the defendant's deportation were the result of a ministerial, objective observation, and thus had none of the subjective features of reports made in a more adversarial setting, such as an investigation of a crime scene. *Id.* at 535.

■ We find the reasoning of these cases persuasive. This circuit has recognized that Rule 803(8) is designed to permit the admission into evidence of public records prepared for purposes independent of specific litigation. *United States v. Stone,* 604 F.2d 922 (5th Cir.1979) (Rule 803(8)(A)). In the case of documents recording routine, objective observations, made as part of the everyday function of

the preparing official or agency, the factors likely to cloud the perception of an official engaged in the more traditional law enforcement functions of observation and investigation of crime are simply not present. Due to the lack of any motivation on the part of the recording official to do other than mechanically register an unambiguous factual matter (here, appellant's departure from the country), such records are, like other public documents, inherently reliable. *See Smith v. Ithaca,* 612 F.2d 215, 222 (5th Cir.1980) (records trustworthy where recording official has no reason to be other than objective).

We further believe that the warrant of deportation in this case establishes the service required by *Wong Kim Bo.* Appellant's thumbprint on the warrant indicates that the warrant was presented to him prior to departure. Additionally, testimony of Border Patrol Agent Meshirer conclusively established the authenticity and reliability of this record of deportation. *See* F.R.Evid. 901(b)(7). He testified that the warrants of deportation are kept in the normal course of business of the INS. Trial Transcript at 11. He further testified that the warrants of deportation are kept as a matter of course with the individual file maintained for each alien being processed. *Id.* at 9–10. This testimony clearly indicated the extent to which such records are relied on by the INS in its day-to-day operations.

Moreover, in a case like the one at bar, the absolute necessity of proving the government's case through the use of public records is unquestionable. In the years 1977–1981, the INS processed for departure from the country, on average, more than 1,000,000 aliens annually.[10] In 1981, more than 260,000 aliens were processed in the State of Texas alone, with over 6,000 of those having been officially deported. Given these numbers, it is unlikely that testimony by an INS officer as to the deportation of a particular individual could be based on anything other than recorded ob-

---

10. The source of the statistics cited in the text is    the 1981 Statistical Yearbook of the INS.

servations, with such testimony being merely cumulative to the more reliable written record of deportation.

■ We thus conclude that the warrant of deportation, containing appellant's thumbprint and indicating the date and location of his deportation, sufficiently established the arrest requirement contemplated by the statute. Given the overwhelming number of immigration cases processed each year, the INS must be permitted to rely on such records to establish certain elements of a violation of § 1326.

### Testimonial Evidence

The proof of service of the warrant contained on the document itself was further corroborated by the testimony of Agent Meshirer. His testimony was designed to demonstrate the normal procedure followed in executing a warrant of deportation: that the deporting officer obtains the thumbprint of the deportee on the back of the warrant, as well as providing the deportee with copies of the warrant and INS Form I–294.

On cross-examination, counsel for appellant elicited Agent Meshirer's testimony that he had never personally observed the execution of a warrant, and that his knowledge of the procedures was based "on what he had been told by detention officers," as well as "the normal rule of things and the normal processes of deportation." Transcript at p. 24. Appellant's counsel thereafter objected to the testimony as hearsay, an objection which he reasserts here.

We believe that appellant's argument, phrased and briefed in terms of the hearsay rule, is more appropriately understood as implicating the personal knowledge requirement of F.R.Evid. 602.[11] Of course,

the hearsay rule and the personal knowledge requirement are cut at least in part from the same cloth, as the Advisory Committee Notes to Rule 602 acknowledge: "This rule would, however, prevent [a witness] from testifying to the subject matter of [a] hearsay statement, as he has no personal knowledge of it." In the present case, however, the most important question is not whether the trial court improperly admitted hearsay testimony, but rather whether the witness had adequate knowledge to testify to the normal practice followed by INS agents in executing warrants of deportation.

The government's strategy was clearly to use Agent Meshirer's testimony to establish the normal practice of the INS in order to prove conduct in conformity therewith, in accordance with F.R.Evid. 406.[12] This court has recognized the admissibility of such evidence. See, e.g., Spartan Grain and Mill Company v. Ayers, 517 F.2d 214, 219 (5th Cir.1975); Stevens v. U.S., 306 F.2d 834 (5th Cir.1962).

■ It is true, as appellant urges, that Agent Meshirer cannot be allowed to testify as to the subject matter of a hearsay statement, in this case, the out-of-court statements of detention officers as to the procedures followed at deportations. Nor in this case may the witness satisfy the personal knowledge requirement of Rule 602 by reliance on inadmissible hearsay. However, our inquiry does not end there— for even if testimony is based in part on inadmissible hearsay, Rule 602 will be satisfied if "evidence is introduced sufficient to support a finding that [the witness] has personal knowledge of the matter." Rule 602. We believe the government's witness

---

**11.** F.R.Evid. 602:

A witness may not testify to a matter unless evidence is introduced sufficient to support a finding that he has personal knowledge of the matter. Evidence to prove personal knowledge may, but need not, consist of the testimony of the witness himself. This rule is subject to the provisions of Rule 703, relating to opinion testimony by expert witnesses.

**12.** F.R.Evid. 406. Habit; routine practice.

Evidence of the habit of a person or of the routine practice of an organization, whether corroborated or not and regardless of the presence of eyewitnesses, as relevant to prove that the conduct of the person or organization on a particular occasion was in conformity with the habit or routine practice.

met this standard.[13] He testified that he had performed various functions for the Border Patrol, including traffic check, line watch, and service as a warrant officer. He gave extensive testimony relating to the procedures followed in keeping the records of all persons deported. Moreover, his testimony revealed that his knowledge of the procedure followed in executing warrants of deportation was based not only on what he had been told by detention officers, but also on "the normal rule of things and the normal processes of deportation." Transcript at p. 24.

Thus, while Agent Meshirer's testimony does not reveal that he had physically observed the execution of a warrant of deportation, we believe it is sufficient to permit the conclusion that he was familiar with the procedure.[14] The properly admitted testimony corroborated the proof of deportation contained on the warrant itself. Additionally, the testimony permits the conclusion that, through the use of Form I-294, appellant was informed in his native language of the penalties for illegal reentry. In this manner, the requirements of *Wong Kim Bo* were clearly satisfied.

### Conclusion

We conclude that the government has adduced sufficient, competent evidence to prove an arrest under 8 U.S.C. § 1326. Given the sheer volume of cases handled by the INS, it is crucial that the government be able to rely on properly maintained and authenticated records to establish violations. As we have already observed, a requirement of direct testimony by the deporting officer would add little to the weight of evidence, considering the improb-

ability that he would recall the facts surrounding any one particular deportation.

Here, the documentary evidence of deportation with appellant's thumbprint thereon, corroborated by the testimony as to the regular practice of deporting officers, adequately supports the trial court's conclusion.

AFFIRMED.

---

**13.** Thus, to the extent that the witness' knowledge of the deportation procedure was based on hearsay, any error regarding the testimony is harmless, and can be disregarded. *See* F.R. Crim.P. 52(a).

**14.** The situation is similar to that presented where testimony is given concerning the mailing of a letter in the normal course of business. This circuit has long accepted proof of the normal practice of the use of the mails by means of circumstantial evidence, without requiring the

testimony of a business' mail clerk, ostensibly the only person who could testify directly to the business practice of mailing and receiving letters. *See, e.g., Stevens v. United States,* 306 F.2d 834 (5th Cir.1962); *see generally* 2 D. Luisell and C. Mueller, § 159 at p. 225. In such cases, as here, all that is necessary is some competent evidence as to the routine practice followed by the organization, given by someone familiar with these procedures.