UNITED STATES of America,
Plaintiff–Appellee,

v.

Cary BROWN, Defendant–Appellant.

No. 92–4527
Non-Argument Calendar.

United States Court of Appeals,
Eleventh Circuit.

Dec. 21, 1993.

Kenneth M. Swartz, Asst. Federal Public Defender, Miami, FL, for defendant-appellant.

Daryl E. Trawick, Linda Collins Hertz, Jeanne M. Mullenhoff, Carol Herman, Miami, FL, Asst. U.S. Attys. for plaintiff-appellee.

Before TJOFLAT, Chief Judge, BIRCH and BLACK, Circuit Judges.

PER CURIAM:

The appellant, Cary Brown, appeals his conviction and sentence for possession of a firearm by a convicted felon, in violation of 18 U.S.C. § 922(g)(1). Because we find no merit to Brown's arguments on appeal, we AFFIRM.

## I. BACKGROUND

On February 11, 1991, Miami Police Officers Raymond Socorro and Wayne Cooper approached the appellant, Cary Brown, at an intersection in Coconut Grove, Florida. After following Brown on foot for several blocks, Officer Cooper called out to him, and Brown began to run. In the ensuing chase, Officer Socorro saw the defendant pull an object from his waistband and throw it to the ground. Socorro retrieved the object, a .38 caliber Taurus revolver, but was unable to apprehend Brown. Socorro took the weapon to the Miami Police Department's property unit, and a property receipt was prepared. Because no arrest was made and the suspect was unknown, the property was classified as found property, rather than evidence.

About two weeks later, Officers Socorro and Cooper identified Brown at a nearby intersection. The officers arrested Brown and took him into custody. Following the arrest, Officer Socorro never returned to the property room to reclassify the Taurus revolver as evidence. As a result, the weapon was later destroyed by the police department, pursuant to standard policy.

At trial, the court rejected Brown's motion to dismiss the indictment or, in the alternative, to exclude all evidence and testimony relating to the firearm. Over Brown's objection, the government introduced as evidence the property receipt for the weapon. The government also called Willard Delancy, a crime scene technician, who testified that he inspected the weapon and found no latent fingerprints. Brown's sole defense was the alibi of his mother, who testified that Brown was in his room on the night of February 11 at the time in question.

Following the trial, the jury returned a verdict of guilty. At the sentencing phase, the government introduced the Presentence Investigation Report (PSI), which identified Brown as an Armed Career Criminal subject to an enhanced sentence pursuant to 18 U.S.C. § 924(e). The PSI applied section 4B1.4(b)(3)(B) of the United States Sentencing Guidelines to compute a total offense level of 33, and due to his extensive criminal history,[1] the PSI assigned Brown 13 criminal history points for a criminal history category of VI. Consequently, Brown's presumptive guideline imprisonment range was 235–293 months.

Accepting the recommendations of the PSI, the district court imposed a sentence that departed upward from the guideline range. The upward departure was based on two provisions of the sentencing guidelines. First, pursuant to U.S.S.G. § 4A1.3, the district court found that Brown's criminal history category did not adequately reflect the severity of his past criminal conduct or the likelihood of recidivism.[2] The court found that Brown had received lenient treatment for several of his previous convictions. Second, the court found that Brown's conduct constituted a significant risk to the public

1. The PSI shows that Brown's numerous criminal transgressions since 1974 include the following: burglaries at ages 10, 15, and 16; robbery by force; burglary and grand theft; resisting arrest; disturbing a school function and resisting arrest; marijuana possession; disorderly conduct and resisting arrest; aggravated assault; disorderly conduct and assault and battery; disorderly conduct; possession with intent to distribute cocaine; loitering; and twelve other arrests in 1982, 1983, 1988, 1989, and 1990.

2. Section 4A1.3 provides that the sentencing court may depart from the applicable guideline range where "the criminal history category does not adequately reflect the seriousness of the defendant's past criminal conduct or the likelihood that the defendant will commit other crimes." United States Sentencing Commission, *Guidelines Manual*, § 4A1.3 (Nov.1992).

welfare under U.S.S.G. § 5K2.14.[3] The district court sentenced Brown to 360 months of incarceration, and Brown timely filed this appeal.

## II.  DISCUSSION

Brown raises five issues on appeal: (1) whether the loss of the firearm by the police department was a result of bad faith and thus a violation of the Due Process Clause; (2) whether the district court erred by admitting the property receipt in violation of the hearsay rule; (3) whether the court erred by departing upward from the sentencing guideline range based on the finding that Brown's criminal history did not adequately reflect the severity of his past criminal conduct or the likelihood of recidivism; (4) whether the court erred by departing upward from the sentencing guideline range based on the finding that Brown posed a danger to the public welfare; and (5) whether the sentence imposed by the court was an unreasonable upward departure from the guideline range. We address each of Brown's arguments in turn.

### A.  Loss of the Firearm

Brown contends that the loss of the firearm by the government in this case was in bad faith and thus violated his right to due process of law. The district court's conclusion that no due process violation occurred is a mixed question of law and fact. We review the court's factual conclusions under the clearly erroneous standard, while the court's legal conclusions are subject to *de novo* review. *United States v. Adams,* 1 F.3d 1566, 1577 (11th Cir.1993).

In order to show that the loss of evidence by the government constitutes a denial of due process, the defendant must show that the evidence was likely to significantly contribute to his defense. *California v. Trombetta,* 467 U.S. 479, 488, 104 S.Ct. 2528, 2534, 81 L.Ed.2d 413 (1984). "To meet this standard of constitutional materiality, evidence must both possess an exculpatory

value that was apparent before the evidence was destroyed, and be of such a nature that the defendant would be unable to obtain comparable evidence by other reasonably available means." *Id.* at 489, 104 S.Ct. at 2534 (citation omitted). In addition, the loss of potentially useful evidence by the government does not constitute a denial of due process unless the defendant can show that the police acted in bad faith. *Arizona v. Youngblood,* 488 U.S. 51, 58, 109 S.Ct. 333, 337, 102 L.Ed.2d 281 (1988); *United States v. Nabors,* 707 F.2d 1294, 1297 (11th Cir.1983), *cert. denied,* 465 U.S. 1021, 104 S.Ct. 1271, 79 L.Ed.2d 677 (1984).

The district court properly found that Brown failed to show that the loss of the firearm deprived him of due process of law. Brown presented no evidence of bad faith on the part of the police. Brown's sole argument that the government acted in bad faith is his contention that where material evidence is not preserved by the government, "the only conclusion that can be drawn is that the government acted in bad faith." Appellant's Brief at 12. We disagree that this is the "only conclusion" that can be drawn from the loss of evidence. The district court properly concluded that, at most, the officer's failure to reclassify the gun as evidence amounted to negligence, not bad faith.

Furthermore, Brown cannot show that he suffered any prejudice from the loss of the firearm. Brown's sole defense at trial was his alibi, supported with his mother's testimony, that he was in his room on the night the weapon was recovered. Moreover, the government's witness testified that Brown's fingerprints were not found on the weapon. We are unable to conceive of how production of the weapon could have contributed to Brown's defense in any way. The district court properly concluded that the loss of the firearm did not violate Brown's right to due process of law.

### B.  Admission of the Property Receipt

Brown next contends that the court erred by admitting the property receipt for the

---

**3.**  Section 5K2.14 provides: "If national security, public health, or safety was significantly endangered, the court may increase the sentence above the guideline range to reflect the nature and circumstances of the offense." U.S.S.G. § 5K2.14.

weapon into evidence as an exception to the hearsay rules. Brown first argues that the government failed to establish that the information on the property receipt was kept pursuant to the ordinary, regular course of business as required by the business records exception. *See* Fed.R.Evid. 803(6). Alternatively, Brown asserts that Rule 803(6) may not be used to admit police records into evidence, in contravention of the prohibition of the public records exception. *See* Fed. R.Evid. 803(8)(B).

■ We reject Brown's argument that the government failed to establish a proper foundation for admitting the property receipt under the business records exception.[4] Before introducing the property receipt into evidence, the government established that its regular and customary procedure was to fill out a property receipt for any type of evidence. The police custodian testified that for every piece of evidence, he filled out a property receipt containing the case number, date, location the property was found, and a description of the evidence. Brown's argument that the government must establish that it was customary to list the make and serial number of the gun takes the foundation requirement to unwarranted extremes.

■ Brown also argues that Rule 803(6) cannot be used to admit evidence that would otherwise be barred by the language of Rule 803(8)(B) excluding from the public records exception matters observed by law enforcement personnel.[5] The former Fifth Circuit has held that the business records exception cannot be used as a "back door" to introduce evidence that would not be admissible under Rule 803(8)(B). *United States v. Cain*, 615 F.2d 380, 382 (5th Cir.1980) (per curiam); *accord United States v. Oates*, 560 F.2d 45, 68 (2d Cir.1977). At trial, however, Brown failed to raise this basis for his objection.

Therefore, we review this issue on appeal only for plain error. *United States v. Sorondo*, 845 F.2d 945, 948–49 (11th Cir.1988).

■ Although Rule 803(6) cannot be used as a back door to admit evidence excluded by Rule 803(8)(B), we believe that the property receipt in the instant case is not the type of evidence contemplated by the exclusion of Rule 803(8)(B). In excluding from the public records exception those matters observed by police officers and other law enforcement personnel, Congress was concerned about the adversarial nature of the relationship between law enforcement officials and defendants in criminal proceedings. S.Rep. No. 1277, 93d Cong., 2d Sess. (1974), *reprinted in* 1974 U.S.C.C.A.N. 7051, 7064. Congress was aware of the inherent bias that might exist in reports prepared by law enforcement officials in anticipation of trial. Congress, therefore, excluded such matters from the public records exception.

Many courts, however, have drawn a distinction between police records prepared in a routine, non-adversarial setting and those resulting from a more subjective investigation and evaluation of a crime.[6] *E.g., United States v. Quezada*, 754 F.2d 1190, 1194 (5th Cir.1985); *United States v. Grady*, 544 F.2d 598, 604 (2d Cir.1976). As the Fifth Circuit stated in *Quezada:*

> In the case of documents recording routine, objective observations, made as part of the everyday function of the preparing official or agency, the factors likely to cloud the perception of an official engaged in the more traditional law enforcement functions of observation and investigation of crime are simply not present. Due to the lack of any motivation on the part of the recording official to do other than mechanically register an unambiguous factual

---

**4.** Rule 803(6) permits the introduction of certain business records "if kept in the course of a regularly conducted business activity, and if it was the regular practice of that business activity to make the memorandum, report, record, or data compilation." Fed.R.Evid. 803(6).

**5.** Rule 803(8)(B) allows the admission of certain public records setting forth matters observed pursuant to a legal duty, "excluding, however, in criminal cases matters observed by police offi-

cers and other law enforcement personnel." Fed.R.Evid. 803(8)(B).

**6.** Apparently, our circuit has not yet resolved this issue. Although we had the opportunity to do so in *United States v. Baggett*, 954 F.2d 674, 678 (11th Cir.), *cert. denied,* — U.S. ——, 112 S.Ct. 2983, 119 L.Ed.2d 601 (1992), we declined to decide the issue because the admission of the police report in that case did not prejudice the defendant.

matter ..., such records are, like other public documents, inherently reliable.

*Quezada,* 754 F.2d at 1194. We are persuaded by this reasoning. The police custodian in the instant case had no incentive to do anything other than mechanically record the relevant information on the property receipt. We believe that this is the type of reliable public record envisioned by the drafters of Rule 803(8). We therefore hold that the trial court's admission of the property receipt did not constitute plain error.

### C. Upward Departure from Sentencing Guidelines

With a criminal history category of VI and an offense level of 33, Brown's presumptive imprisonment range under the sentencing guidelines was 235–293 months. Adopting the recommendations of the PSI, however, the district court departed upwards from the sentencing guideline range and sentenced Brown to 360 months' incarceration. The district court based its upward departure on two factors: its determination that Brown's criminal history category did not adequately reflect the severity of his past criminal conduct or the likelihood of recidivism and its finding that Brown constituted a threat to the public welfare. Brown challenges both of these findings, as well as the reasonableness of the court's upward departure.

Our review of departure cases consists of a three-step process. *United States v. Weaver,* 920 F.2d 1570, 1573 (11th Cir.1991). First, we review the district court's legal determinations on a *de novo* basis. *Id.* Second, we examine the court's factual findings for plain error. *Id.* Finally, we examine the court's departure for reasonableness. *Id.* With this framework in mind, we examine Brown's remaining arguments in turn.

### 1. Criminal History Category

■ The district court accepted the recommendation of the PSI and departed upward from the sentencing guideline range

under section 4A1.3. Section 4A1.3 provides for a departure from the sentencing range where the defendant's criminal history category does not adequately reflect the seriousness of the defendant's past criminal conduct or the likelihood of recidivism. Brown challenges the district court's upward departure, arguing that the court provided insufficient factual support for its decision.[7]

According to the comments accompanying section 4A1.3, "[T]here may, on occasion, be a case of an egregious, serious criminal record in which even the guideline range for Criminal History Category VI is not adequate to reflect the seriousness of the defendant's criminal history." U.S.S.G. § 4A1.3 policy statement. The district court agreed with the recommendation of the PSI that Brown's record fell into this category. The PSI gave two reasons for its recommendation: first, Brown did not receive criminal history points for a 1987 probation revocation that ran concurrently with another sentence; second, Brown received lenient treatment for several of his past convictions.

We find no error in the court's decision to depart from the sentencing guideline range. The PSI thoroughly set forth Brown's extensive criminal history,[8] as well as his respective sentences, and concluded that an upward departure under section 4A1.3 was justified. In *United States v. Suarez,* 939 F.2d 929 (11th Cir.1991), we held that an appellate court may properly consider the entire record from the sentencing hearing, including the PSI, in reviewing the district court's factual support for its decision. *Id.* at 933–34. We find that the district court had ample support for its upward departure.

### 2. Threat to Public Welfare

■ The district court also based its upward departure on U.S.S.G. § 5K2.14, which provides for sentence enhancement if the defendant's conduct posed a significant threat to public health or safety. Brown

---

**7.** *See* 18 U.S.C. § 3553(c) ("The court, at the time of sentencing, shall state in open court the reasons for its imposition of the particular sentence, and, if the sentence ... is not of the kind, or is outside the range, described in [the sentencing guidelines], the specific reason for the impo-

sition of a sentence different from that described.").

**8.** *See supra* note 1 (summarizing Brown's numerous legal transgressions).

contends that the district court erred by considering the defendant's criminal history in deciding to depart from the sentencing guideline range under section 5K2.14. He argues that section 5K2.14 contemplates a close nexus between the offense of conviction and the threat to public safety. *See United States v. Barone,* 913 F.2d 46, 51 (2d Cir. 1990). Therefore, Brown argues, the court should look only to the offense of conviction and not to the defendant's background.

We have never held that a sentencing court may not consider all pertinent facts and circumstances in determining whether to apply section 5K2.14. As Brown notes in his brief, we have held that departure is warranted under section 5K2.14 where "the defendant's conduct posed a threat to public safety 'substantially in excess of that ordinarily involved in the offense.'" *United States v. Dempsey,* 957 F.2d 831, 834 (11th Cir.) (quoting *United States v. Loveday,* 922 F.2d 1411, 1417 (9th Cir.1991)), *cert. denied,* —— U.S. ——, 113 S.Ct. 241, 121 L.Ed.2d 175 (1992). We believe that Brown's extensive criminal history was a proper consideration for the district court. The court could reasonably conclude that the illegal possession of a handgun by a career criminal such as Brown posed a threat to public safety substantially in excess of that ordinarily involved in the offense.

**3. Reasonableness of Departure**

Finally, Brown argues that the sentence imposed by the district court was an unreasonable departure from the sentencing guideline range. He contends that, when using a range greater than criminal history category VI, the district court must first find a range comparable to the next higher criminal history category. The court must either use that intermediate range or, if it chooses to depart to a higher range, explain its reasons for doing so.

Brown misinterprets our prior holdings. In *United States v. Johnson,* 934 F.2d 1237 (11th Cir.1991), we held that, in departing upward from criminal history category III under section 4A1.3, a district court must look to the next higher criminal history category and determine whether that category more accurately reflects the defendant's

criminal history. *Id.* at 1239. This reasoning, however, does not apply when a court departs upward from criminal history category VI. As we stated in *United States v. Simmons,* 924 F.2d 187 (11th Cir.1991), "[T]he guidelines provide no such structure when a court determines that the defendant should be sentenced above category VI.... [T]here is no guideline range for the district court to chose [sic] from when sentencing above category VI." *Id.* at 191. When a district court departs above category VI, therefore, we review the sentence only for reasonableness. *Id.*

We find that the district court's decision to depart from the guideline range of 235–293 months and impose a sentence of 360 months was reasonable. The upward departure was based, not only upon Brown's extensive criminal history, but on the court's determination that Brown's conduct posed a significant threat to the public welfare. We find that these reasons provide proper bases for the court's upward departure.

## III. CONCLUSION

We have carefully examined each of Brown's arguments and find them unavailing. Finding no error in Brown's conviction or sentencing, we AFFIRM.