[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
DEC 27, 2010
JOHN LEY
CLERK

No. 10-10458
Non-Argument Calendar
_____

D.C. Docket No. 4:09-cr-10021-KMM-1

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

CARLOS REYES,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

(December 27, 2010)

Before BLACK, CARNES and WILSON, Circuit Judges.

PER CURIAM:

Carlos Reyes participated in an alien-smuggling operation that resulted in the drowning death of a young child after the go-fast boat capsized while trying to evade capture. Reyes was convicted by a jury of 29 counts of knowingly encouraging and inducing 29 aliens to enter the United States in violation of 8 U.S.C. §§ 1324(a)(1)(A)(iv) and (a)(1)(B)(iv), and one count of conspiring to encourage and induce aliens to enter the United States in violation of 8 U.S.C. §§ 1324(a)(1)(A)(iv), (a)(1)(A)(v)(I), and (a)(1)(B)(iv). Reyes raises a number of issues in this appeal. He contends that the United States Coast Guard's situation report is inadmissible hearsay; that admission of the situation report violates the Confrontation Clause; and that there is insufficient evidence to support his convictions.

## I.

Reyes first contends that the admission of the Coast Guard's situation report at his trial was error because that report is inadmissible hearsay. The report was admitted under the public records exception of Federal Rule of Evidence 803(8). Reyes argues that it was not within that exception because the law enforcement limitation to the exception applies. We review a district court's ruling on hearsay evidence only for an abuse of discretion. United States v. Brown, 441 F.3d 1330, 1359 (11th Cir. 2006).

Hearsay is "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Fed. R. Evid. 801(c). Under Rule 803(8), however, documents are not excluded as hearsay if they are records, reports, statements, or data compilations of public agencies containing matters observed under a duty to report. Fed. R. Evid. 803(8)(B). In criminal cases, however, the exception contained in that rule does not cover matters observed by police officers and other law enforcement personnel. Fed. R. Evid. 803(8). Coast Guard officers act at times as law enforcement personnel in discharging their duties. Cf. United States v. Trujillo, 573 F.3d 1171, 1173 (11th Cir. 2009) (discussing a joint operation between the Coast Guard and a "virtual alphabet soup of federal law enforcement agencies"). The situation report in its unredacted form recounted all of the events of the interdiction including the 40-minute high-speed, go-fast boat chase that ended in a capsized boat, a rescue, and the death of a child. The situation report in that form would almost certainly fit within the law enforcement limitation to Rule 803(8) as a matter observed by law enforcement personnel.

The entire situation report, however, was not introduced into evidence. The government stripped the situation report down to a bare list of the names of the aliens found in the water near the go-fast boat and the identification numbers

3

assigned by the Coast Guard to keep track of those aliens during their detention on the Coast Guard vessel. The situation report in that redacted form is akin to information resulting from filling out a booking sheet and assigning a prisoner number to someone detained at a county jail. This Court has reasoned that such "documents recording routine, objective observations, made as part of the everyday function of the preparing official or agency" are precisely the "type of reliable record envisioned by the drafters of Rule 803(8)." See United States v. Brown, 9 F.3d 907, 911–12 (11th Cir. 1993) (holding that admission of a police custodian's property receipt to show existence of a firearm did not violate Rule 803(8)); see also United States v. Caraballo, 595 F.3d 1214, 1226 (11th Cir. 2010) ("[A]dmission of routinely and mechanically kept I.N.S. records, such as . . . warrants of deportation, does not violate Rule 803(8)(B)." (quoting United States v. Agustino-Hernandez, 14 F.3d 42, 43 (11th Cir.1994))); United States v. Dowdell, 595 F.3d 50, 72 (1st Cir. 2010) (finding that the admission of the "rote recitation of biographical information in a booking sheet" does violate Rule 803(8)).

In this case the government offered evidence that matching the names of aliens with custodial identification numbers onboard Coast Guard cutters is a routine, non-adversarial procedure used to track individuals until they are

transferred to other agencies in the United States or repatriated to the countries from which they came. Recording aliens' names and assigning identification numbers to log and track detainees while onboard a Coast Guard vessel does not differ in form from intake procedures performed at the local jail. Both are "routine, objective observations, made as a part of the everyday function" of the agency and do not violate Rule 803(8). The district court did not abuse its discretion in admitting the situation report under Rule 803(8).[1]

Reyes also contends that the names within the situation report were out-of-court statements by the alien declarants, and those names were themselves hearsay and should not have been admitted. But the aliens' statements providing names were not offered for the truth of the matter asserted—they were not offered to prove that any alien was in fact who he said that he was. Instead, those names were offered and admitted only to prove that the names were stated by the aliens and that an officer recorded those names and the number of the corresponding bracelet that was placed on each alien's wrist for identification and tracking purposes. That information in turn was matched with records of repatriation to

---

[1] Reyes makes a passing reference and brief argument that another document, which recorded the aliens' repatriation to Cuba, also constituted hearsay. Even assuming that issue is sufficiently raised, that document, like the situation report, falls within the Rule 803(8) public records exception because it was a "document[] recording routine, objective observations, made as part of the everyday function of the preparing official or agency." See, Brown, 9 F.3d at 911.

Cuba, which was relevant to the issue of whether the aliens lacked authorization to come to the United States. Whether an alien was repatriated to Cuba under his correct name or a fictitious one was irrelevant.

II.

Reyes' second contention is that admission of the situation report violated the Confrontation Clause. We review de novo the district court's rejection of that issue. United States v. Lamons, 532 F.3d 1251, 1261 n.15 (11th Cir. 2008). As we have already mentioned, the only parts of the report that were admitted were the names the aliens gave and the identification numbers assigned to those names. Because the names the aliens gave were not offered for the truth of the matter asserted, it follows that cross-examination of the alien making that out-of-court statement to determine its truth would be fruitless. Whether the alien gave a false name is irrelevant. Put differently, if it does not matter whether the aliens were telling the truth, then they are not testifying as "witnesses against" Reyes under the Confrontation Clause of the Sixth Amendment. U.S. Const. Amend. VI; see also United States v. Jiminez, 564 F.3d 1280, 1286–1287 (11th Cir. 2009) ("The Clause . . . does not bar the use of testimonial statements for purposes other than establishing the truth of the matter asserted." (alterations omitted) (quoting Crawford v. Washington, 541 U.S. 36, 59 n. 9, 124 S.Ct. 1354, 1369 n.9 (2004))).

6

Additionally, to the extent Reyes argues that the situation report itself violates the Confrontation Clause, both the Coast Guard officer who gathered the names from the aliens and assigned their identification numbers and the officer who recorded the names in the situation report testified in court. Reyes had the opportunity to cross-examine those officers about what the aliens said, how numbers were assigned to the names, which numbers were assigned to which names, and so forth.

## III.

Reyes also contends that the evidence was insufficient to support his conviction for encouraging or inducing aliens to come to the United States in violation of 8 U.S.C. § 1324(a)(1)(A)(iv), and to support his conviction for conspiring to do that under 8 U.S.C. § 1324(a)(1)(v)(I). We review de novo the sufficiency of the evidence, viewing all evidence, reasonable inferences, and credibility choices in favor of the verdict. United States v. Greer, 440 F.3d 1267, 1271 (11th Cir. 2006). A jury verdict cannot be set aside "if any reasonable construction of the evidence would have allowed the jury to find the defendant guilty beyond a reasonable doubt." United States v. Herrera, 931 F.2d 761, 762 (11th Cir. 1991).

## A.

The government charged Reyes with 29 counts under 8 U.S.C. § 1324(a)(1)(A)(iv), one for each alien. The elements of that statute are: "(1) encouraging or inducing; (2) an alien; (3) to come to . . . the United States; and (4) knowing or in reckless disregard that the alien's coming to . . . the United States is illegal." Edwards v. Prime, Inc., 602 F.3d 1276, 1294 (11th Cir. 2010) (quoting United States v. Lopez, 590 F.3d 1238, 1250 (11th Cir. 2009)); see also 8 U.S.C. § 1324(a)(1)(A)(iv). "This Court has given a broad interpretation to the phrase 'encouraging or inducing' in this context, construing it to include the act of 'helping' aliens come to . . . the United States." Edwards, 602 F.3d at 1295.

Reyes asserts that the evidence presented by the government is insufficient to satisfy the first element of encouraging or inducing under that statute because all he did was plug coordinates into a GPS and plug his phone number into a satellite phone. He argues that including that conduct under the first element of § 1324(a)(1)(A)(iv) stretches even this Court's broad interpretation of the phrase "encouraging or inducing" too far.[2]

Reyes' portrayal of the evidence and his argument, however, miss the boat. The evidence presented by the government proved at the very least that he helped

---

[2] Reyes also asserts that such a broad reading renders 8 U.S.C. §§ 1324(a)(1)(A)(i) and (a)(1)(A)(v)(II) superfluous. This Court specifically addressed and rejected those arguments in Lopez. See Lopez, 590 F.3d at 1250–51.

the aliens to come from Cuba to the United States.  There was testimony that Reyes was the "organizer of the trip" and made calls to Cuba to coordinate the pickup of the aliens.  There was also testimony that Reyes, in addition to providing and initially plugging in the GPS coordinates of the pickup rendevous and providing a satellite phone with his number programmed in it, helped the pilots via satellite phone to reprogram the GPS when it malfunctioned while the boat was on the high seas en route to Cuba.  Without Reyes' help, the smuggling operation would have been back to square one because the pilots could not have guided the go-fast boat to the rendevous point where the aliens were waiting for them.  There was also evidence that he instructed the pilots how to evade interdiction by the Coast Guard and told them what they should do in case they got caught.  That was plenty of evidence to support Reyes' conviction under 8 § 1324(a)(1)(A)(iv).[3]

### B.

Reyes also argues that the government failed to produce sufficient evidence to support his conspiracy conviction under 8 U.S.C. § 1324 (a)(1)(A)(v).  He

---

[3] Reyes also briefly argues that the government insufficiently proved each alien's lack of authorization to enter the United States.  As we have already discussed, there was evidence showing a covert smuggling operation resulting in the go-fast boat picking up 29 aliens who were waiting for that boat in the water off the Cuban shore.  En route to the United States, the go-fast boat attempted to evade authorities, resulting in a 40-minute, highspeed chase.  There was evidence that the aliens were detained by the Coast Guard after the interdiction and that each alien was successfully repatriated back to Cuba.  That was more than enough evidence to prove that the 29 aliens were Cuban nationals not authorized to enter the United States.

9

asserts that the government presented no evidence of arrangements between Reyes and any foreign national. The lack of any arrangement, Reyes claims, made it impossible for him to have conspired to encourage or induce any aliens to come to the United States in violation of 8 § U.S.C. § 1324(a)(1)(A)(iv).

That argument is unpersuasive, because the absence of arrangements between Reyes and any aliens is not dispositive. The elements of criminal conspiracy are: (1) an agreement to commit a crime, (2) defendant's knowing and voluntary participation in the conspiracy, and (3) performance by at least one conspirator of an overt act in furtherance of the conspiracy. United States v. Ndiaye, 434 F.3d 1270, 1294 (11th Cir. 2006). The government may show conspiracy "by circumstantial evidence and the extent of participation in the conspiracy or extent of knowledge of details . . . does not matter if the proof shows the defendant knew the essential objective of the conspiracy." United States v. Gupta, 463 F.3d 1182, 1194 (11th Cir. 2006) (quotations marks omitted).

Like the convictions under 8 U.S.C. § 1324(a)(1)(A)(iv), Reyes' conspiracy conviction under § 1324(a)(1)(A)(v)(I) is supported by ample evidence. There was evidence that after the first departure to Cuba failed, Reyes was present at a meeting where a new plan was put together so that the illegal smuggling trip could be completed. Reyes also fulfilled his role in that agreed-to plan when he

programmed the GPS, provided the satellite phone, and communicated on numerous occasions with the pilots while they were en route to Cuba. The evidence sufficiently showed that Reyes and the pilots agreed to commit a crime, and Reyes, with knowledge of the plan, participated in it and committed numerous overt acts in furtherance of it.

**AFFIRMED.**