[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 15-12025
Non-Argument Calendar
_____

D.C. Docket No. 1:14-cr-00116-KD-C-1

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

LANCY WHITE, JR.,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Alabama
_____

(August 25, 2016)

Before HULL, WILSON and WILLIAM PRYOR, Circuit Judges.

PER CURIAM:

After a jury trial, Lancy White, Jr., appeals his convictions for using the Internet to attempt to entice a minor to engage in sexual activity, in violation of 18 U.S.C. § 2422(b).  A § 2422(b) conviction requires that the sexual activity the defendant enticed or attempted to entice be a criminal offense.  After review, we affirm White's convictions.

## I.  BACKGROUND FACTS

According to the trial evidence, law enforcement officer Corporal James Morton, posing as "Cindy," a mother of two young girls aged 9 and 12, placed an ad in the "Casual Encounters" section of Craiglist.  White responded to the ad, and, over two days, exchanged emails with "Cindy" in which White discussed meeting "Cindy" to engage in sexual activity with her daughters.  When White arrived at the arranged meeting place, he was arrested.  In a subsequent statement to Corporal Morton, White admitted that he was the person who responded to the Craigslist ad and corresponded via email with "Cindy" and that he had planned to engage in sexual activity, including vaginal and oral sex, with her two daughters.

## II.  DISCUSSION

On appeal, White raises several arguments attacking his convictions.[1]  For the reasons that follow, none of White's claims have merit.

**A.    Specificity of the Indictment**

---

[1]On appeal, White does not raise any issues as to his 132-month sentence.

2

White contends his indictment was deficient because it failed to charge with sufficient specificity the Alabama sex offense for which White could have been charged.  White did not assert this argument in his motion to dismiss the indictment filed in the district court.  Thus, he must show plain error, which he has not.  See Fed. R. Crim. P. 12(b)(3)(B)(iii), 52(b); United States v. Sperrazza, 804 F.3d 1113, 1118-20 (11th Cir. 2015).

The indictment charged White with two counts, one for each of "Cindy's" daughters.  Both counts alleged that the conduct occurred between April 1, 2013 and April 2, 2013.  Count 1 charged that White attempted to entice an individual, whom he believed to be a 9-year-old girl, to engaged in criminal sexual activity and that, had the sexual activity occurred, White could have been charged with violating Alabama Code §§ 13A-6-63 (first degree sodomy), 13A-6-64 (second degree sodomy), and 13A-6-67 (second degree sexual abuse).  Count 2 charged that White attempted to entice an individual, whom he believed to be a 12-year-old girl, to engage in criminal sexual activity and that, had the sexual activity occurred, White could have been charged with violating Alabama Code §§ 13A-6-62 (second degree rape), 13A-6-64 (second degree sodomy), and 13A-6-67 (second degree sexual abuse).

White complains that the indictment did not specify which subsections of the Alabama sex offense statutes his completed conduct would have violated.  Nothing

3

in the record suggested forcible compulsion or that the minors were mentally impaired. The only subsections of the Alabama statutes charged in Counts 1 and 2 that could have applied to White's conduct were those based on the ages of the minor victims, and each count of the indictment charged the victim's age and the applicable Alabama sex offense statutes. Furthermore, the indictment listed the specific dates on which the alleged conduct occurred. Accordingly, we reject White's assertions that he lacked proper notice of the charges and potentially was subjected to double jeopardy. See United States v. Steele, 178 F.3d 1230, 1233-34 (11th Cir. 1999).

To the extent White argues that the Alabama statutes were erroneously listed conjunctively, even assuming arguendo that this was error, White has failed to show the alleged error was prejudicial. At least one of the Alabama statutory provisions applied to White's conduct in each count. Specifically, in Count 1, White could have been charged in Alabama with first degree sodomy, as he stated to Corporal Morton that he sought to engage in oral sex with the 9-year-old daughter. See Ala. Code §§ 13A-6-63(a)(3), 13A-6-60(2). In Count 2, White could have been charged in Alabama with violating any of the statutes listed based on his statements to Corporal Morton regarding oral sex with the 12-year-old daughter. See id. §§ 13A-6-62(a)(1), 13A-6-64(a)(1), 13A-6-67(a)(2). And, where an indictment charges several means of violating a statute in the conjunctive, a

4

conviction may be obtained by proof of only one.  United States v. Simpson, 228 F.3d 1294, 1300 (11th Cir. 2000).

As a corollary, White contends the district court erred when it failed to instruct the jury that to convict him under 18 U.S.C. § 2422(b), the jury was required to unanimously agree on the specific Alabama statute his completed conduct would have violated.  White, however, did not object to the district court's proposed jury instructions and cannot establish that the district court plainly erred, as neither this Court nor the Supreme Court has held that such an instruction is necessary.  See United States v. Lejarde-Rada, 319 F.3d 1288, 1291 (11th Cir. 2003).[2]

## B.     Email Evidence

The district court did not abuse its discretion in admitting the printed copies of the emails between White and Corporal Morton.  See United States v. Caldwell, 776 F.2d 989, 1001 (11th Cir. 1985) (explaining that we will not disturb a district court's determination that a particular piece of evidence was appropriately authenticated unless there is no competent evidence in the record to support it).  Corporal Morton, a witness with knowledge, testified that the printed emails completely and accurately represented the email exchange between him (posing as "Cindy") and White, which was sufficient to admit them.  See Fed. R. Evid.

---

[2]On direct appeal, we decline to address White's claim that his trial counsel was ineffective.  See United States v. Bender, 290 F.3d 1279, 1284 (11th Cir. 2002).

5

901(b)(1); United States v. Belfast, 611 F.3d 783, 819 (11th Cir. 2010).  Any anomalies and inconsistencies in the emails noted by White may have created a question of authenticity for the jury, but did not affect the admissibility of the documents.  See Belfast, 611 F.3d at 819.

The district court also did not abuse its discretion in denying White's motion to dismiss the indictment based on the government's alleged spoliation of the email evidence.  In cases involving the destruction of evidence, to show a defendant's constitutional right to due process was violated, the defendant must show that, among other things, the government acted in bad faith.  United States v. Brown, 9 F.3d 907, 910 (11th Cir. 1993).

At the outset, we note that the record does not appear to support White's claim that the government altered the email evidence.  At trial, Corporal Morton testified that he did not alter or change the emails in any way or hide any content of the emails.  Furthermore, the government's computer forensic expert explained the anomalies in the emails that White argued showed alteration. Specifically, Corporal Morton used a Gmail account to correspond with White through Craiglist, and Google automatically omits prior messages in a long email chain and inserts the phrase "quoted text hidden" in brackets.  In addition, time stamp discrepancies were explained by the fact that Google uses the time in the time zone of the computer the emails are being printed from (in this case Alabama), but the

6

emails also showed Coordinated Universal Time, or "computer time," which would appear to be five hours later, but is actually not.

Nonetheless, even assuming arguendo that the some emails were altered or omitted, White did not point to any evidence that the government did so deliberately, much less that the government deleted or altered emails in bad faith. Rather, White's motion to dismiss the indictment based on spoliation of evidence argued that the government's apparent negligence coupled with its failure to explain the anomalies in the emails rose to the level of denial of due process. Thus, the district court did not err in denying White's motion to dismiss the indictment based on spoliation of evidence.

## C.    Expert Testimony

The district court did not abuse its discretion by excluding the expert testimony of Dr. George Kirkham, a criminologist. White originally proffered Dr. Kirkham as an expert on established procedures for conducting undercover investigations of sex offenders and to opine whether Corporal Morton's email communications with White crossed the line into entrapment. The district court excluded this testimony on relevancy grounds, and White does not challenge that ruling on appeal. Instead, White contends that Dr. Kirkham should have been allowed to testify that the emails between White and Corporal Morton appeared to

have been tampered with or altered, especially since the government was permitted to introduce testimony from a computer forensic expert with the FBI.

The proponent of expert testimony has the burden under Federal Rule of Evidence 702 to show the expert witness: (1) is qualified to testify competently, (2) uses a reliable methodology to reach his conclusions, and (3) will be helpful to the trier of fact.  See United States v. Frazier, 387 F.3d 1244, 1260 (11th Cir. 2004) (en banc).  Here, White has never contended, much less shown, that Dr. Kirkham is an expert on computer forensics or electronic or email evidence.  Nor has White ever explained how Dr. Kirkham's training or experience as a criminologist qualified him to render an opinion on whether the emails between White and Corporal Morton were altered.  In fact, at trial White conceded that he did not know whether Dr. Kirkham was qualified to testify as a computer expert.  Accordingly, White did not carry his burden to show Dr. Kirkham's qualifications or reliability.

As for the government's computer forensic expert, the district court sustained White's objection to the government's expert and did not permit the expert to testify as part of the government's case-in-chief.  During his defense, however, White testified that the emails introduced by the government were out of order and missing some exchanges.  White pointed to the phrase "quoted text hidden" in some of the emails and suggested that the government was hiding some

of his emails that showed he was not interested in having sex with children, but rather wanted to have sex with "Cindy." Only after this testimony from White did the district court allow the government's expert to testify on rebuttal and only to explain the meaning of the phrase "quoted text hidden" and the seeming discrepancies in the time stamps on some of the emails.

As this Court explained in Frazier, the district court does not abuse its discretion when it allows the government's rebuttal expert witness to testify on an issue after the district court has excluded the defendant's expert witness on the same issue, but on grounds other than relevance. Id. at 1269-70 (distinguishing United States v. Gaskell, 985 F.2d 1056, 1063 (11th Cir. 1993), in which the expert's opinion was excluded on relevance grounds and was "otherwise admissible"). That is the case here. Dr. Kirkham's testimony was excluded not because it was irrelevant, but because White failed to show Dr. Kirkham was qualified to testify competently. Once White's own testimony opened the door to whether the emails had been altered, the district court was within its discretion to allow the government's expert to testify on rebuttal.

## D.    Entrapment

White argues that he was entitled to a judgment of acquittal because he was entrapped as a matter of law. White stresses that, in their email correspondence,

9

Corporal Morton first introduced the idea of "family fun" and reinitiated contact with White, and that he (White) never asked to speak with any children.

Given that entrapment is typically a jury question, "entrapment as a matter of law is a sufficiency of the evidence inquiry." United States v. Isnadin, 742 F.3d 1278, 1303 (11th Cir. 2014) (quotation marks omitted). As such, in assessing an argument regarding entrapment as a matter of law, we look to whether the evidence was sufficient for a reasonable jury to conclude that the defendant was predisposed to commit the offense. Id.

The district court did not err in denying White's motion for a judgment of acquittal, as sufficient evidence existed for a reasonable jury to conclude that White was predisposed to commit the offense.[3] Notably, after Corporal Morton, posing as "Cindy," mentioned "family fun," White readily took part in the discussion, stating that "family fun" was something he had always wanted to try and that "this is something [he had] been searching for for quite some time." White expressed hope that he would be invited to "Cindy's" home and also described in explicit detail the sexual acts he wanted to perform on the minors. When "Cindy" invited White to come over the next night, White thanked her for the invitation. They then agreed upon the rules for White's sexual contact with the

---

[3]The district court did instruct the jury regarding entrapment. While there was sufficient evidence to consider the entrapment defense, there was not enough evidence to require an acquittal based on entrapment as a matter of law.

minors and arranged to meet at 6:00 p.m. White also asked about having "an ongoing friendship."

White focuses on the fact that Corporal Morton re-initiated contact the next morning, but Corporal Morton did so merely by stating "Good morning," and White responded that he was going to see "Cindy" that day. The only reservation White expressed during their email communications was that "Cindy" might be setting him up. In his post-arrest interview with Corporal Morton, White said, "The whole family fun, sex with kids and the mother there watching or supervising. That's all really, really heavy stuff. Nasty. It's something you have to be careful with." Moreover, the jury could infer that White was fully aware of the meaning of the phrase "family fun," as he admitted that he wrote a paper on the topic for a college class.

White testified that he believed he was discussing "Cindy's" fantasies in the emails, that he had no sexual interest in children, that his explicit descriptions of sexual acts were aimed at "Cindy," not her daughters, and that the emails were out of order and omitted statements that made that clear. The jury, however, was free to discredit White's explanation, and obviously did. See id. at 1303 (explaining that in reviewing for sufficiency of the evidence, we resolve all reasonable inferences and credibility determinations in favor of the verdict). The

11

government's trial evidence was sufficient for a reasonable jury to conclude that White was predisposed to commit the charged § 2422(b) offenses.

## E.    Evidence of Intent and Substantial Step

Alternatively, White contends that the district court should have granted his motion for a judgment of acquittal because the government failed to present sufficient evidence that he intended to entice a child and that he had completed an attempt by taking a "substantial step" toward committing the crimes.

Section 2422(b) criminalizes both the completed offense of enticing a child, and an attempt to commit the offense, as follows:

> Whoever, using the mail or any facility or means of interstate or foreign commerce, or within the special maritime and territorial jurisdiction of the United States knowingly persuades, induces, entices, or coerces any individual who has not attained the age of 18 years, to engage in prostitution or any sexual activity for which any person can be charged with a criminal offense, or attempts to do so, shall be fined under this title and imprisoned not less than 10 years or for life.

18 U.S.C. § 2422(b) (emphasis added).  In order to sustain a conviction for attempt, "the government need only prove (1) that the defendant had the specific intent to engage in the criminal conduct for which he is charged and (2) that he took a substantial step toward commission of the offense." United States v. Murrell, 368 F.3d 1283, 1286 (11th Cir. 2004).

To prove the intent element, the government must show that the "defendant intended to cause assent on the part of the minor, not that [the defendant] acted

12

with the specific intent to engage in the sexual activity." United States v. Lee, 603 F.3d 904, 914 (11th Cir. 2010) (quotation marks omitted).  It is the persuasion, inducement, enticement, or coercion of the minor, rather than the sex act itself, that is prohibited by the statute.  Murrell, 368 F.3d at 1286.  An attempt to "stimulate or cause the minor to engage in sexual activity" fits the statutory definition of inducement.  Id. at 1287.

This Court has held that direct communication with a supposed minor is unnecessary, and communication with an adult intermediary with the purpose of attempting to entice a minor is sufficient to sustain a conviction.  See United States v. Rothenberg, 610 F.3d 621, 626 (11th Cir. 2010).  Further, by negotiating with a fictitious parent in order to "cause the minor to engage in sexual activity with him," the defendant has the necessary specific intent to violate the attempt provision of § 2422(b).  See Murrell, 368 F.3d at 1287 (noting that "the efficacy of § 2422(b) would be eviscerated if a defendant could circumvent the statute simply by employing an intermediary to carry out his intended objective").

To prove the conduct element of a § 2422(b) attempt, the government must prove that the defendant took a substantial step toward causing assent on the part of the minor, not necessarily toward causing actual sexual contact.  Lee, 603 F.3d at 914. "A substantial step can be shown when the defendant's objective acts mark his conduct as criminal and, as a whole, strongly corroborate the required

13

culpability." United States v. Yost, 479 F.3d 815, 819 (11th Cir. 2007) (quotation

marks omitted).  In determining whether the record supports a finding that the

defendant took a substantial step in committing a § 2422(b) offense, we look at the

totality of the defendant's conduct.  Lee, 603 F.3d at 916.

For example, in Murrell, this Court held that the defendant, who had

arranged to have sex with a minor at a hotel, took a substantial step toward his goal

of inducing her to engage in sexual activity because he: (1) made incriminating

statements to an undercover law enforcement officer, (2) traveled two hours to

meet the girl at the hotel, and (3) brought with him a teddy bear, money to pay the

girl's father, and a box of condoms. Murrell, 368 F.3d at 1288; see also Yost, 479

F.3d at 820 (finding that the defendant made a substantial step that "crossed the

line from mere 'talk' to inducement" by placing a call to an undercover officer

posing as a minor, posting sexually explicit pictures online, and making

arrangements to meet the minor).[4]

Here, the trial evidence, recounted above, amply supports the jury's findings

that White intended to entice a minor, as he contacted and negotiated with "Cindy"

in order to cause her two daughters, whom he believed to be 9 and 12, to engage in

sexual activity with him.  Notably, after he and "Cindy" discussed the "friends"

---

[4]To the extent White argues that we should not follow our precedent in Murrell and
Rothenberg, we are bound by the prior panel's holdings in Murrell and Rothenberg, unless and
until they are overruled or undermined to the point of abrogation by the Supreme Court or by this
Court sitting en banc.  See United States v. Archer, 531 F.3d 1347, 1352 (11th Cir. 2008).

14

that would visit her daughters, White told "Cindy" that he hoped she would invite him to her home and he assured "Cindy" that he would follow her rules and not hurt them.

The evidence also amply supports the jury's finding that White took a substantial step toward causing the purported minors to assent to illicit sexual contact. First, White made incriminating statements to Corporal Morton posing as "Cindy," including describing in explicit detail the sexual activity he planned to engage in with the minors and acknowledging the need for secrecy. See Murrell, 368 F.3d at 1288 (pointing to defendant's incriminating statements as objective acts that corroborate culpability). Second, to the extent these statements were "mere talk," as White contends, White then arranged to meet "Cindy" and her daughters at her apartment and actually drove to that location. See Yost, 479 F.3d at 820 (concluding that the defendant "crossed the line from mere 'talk' to inducement" by placing a call to an undercover officer posing as a minor, posting sexually explicit pictures online, and making arrangements to meet the minor); Murrell, 368 F.3d at 1288 (noting that the defendant travelled two hours to another county to meet the minor for sex).

Accordingly, we conclude that the trial evidence was sufficient for a reasonable jury to convict White of both attempt counts under § 2422(b), and thus the district court did not err in denying White's motion for a judgment of acquittal.

**AFFIRMED.**