STATE of Delaware, Plaintiff,

v.

Antonio RIVERA and Angel M. Rivera, Defendants.

Superior Court of Delaware, New Castle County.

Submitted: April 10, 1986.
Decided: July 3, 1986.

Joseph J. Longobardi, III, Deputy Atty. Gen., Dept. of Justice, Wilmington, for the State.

Mark Lynch, Wilmington, for defendants.

MARTIN, Judge.

Antonio Rivera and Angel M. Rivera (hereinafter "defendants") have filed a motion pursuant to Superior Court Criminal Rule 33 for a new trial on the ground that the admission of a toxicology report prepared by the State Medical Examiner's Office and offered by the State at the defendants' trial on charges of delivery of cocaine constituted hearsay within the meaning of the Delaware Uniform Rules of Evidence (hereinafter "D.R.E.") Sections 801 and 803(8)(B) and (C). Further, defendants contend that the admission of these reports violated their confrontation rights under the Sixth and Fourteenth Amendments to the United States Constitution and Article 1, Section 7 of the Constitution of the State of Delaware.

Defendants were tried and found guilty by a jury on March 3, 1986 for delivery of cocaine. On the day of trial, the State learned that the State forensic chemist who analyzed the substances alleged to be cocaine was unavailable due to illness. The State apparently made no effort to determine when and if the chemist would be available. Instead, the State called another State forensic chemist who testified as to the duties of a forensic chemist employed at the State Medical Examiner's Office and the procedures for obtaining and testing substances believed to be cocaine. This substitute witness also testified that the results of the various tests used to analyze controlled substances are routinely included in a report made at the time of the analysis, or shortly thereafter, and kept on file at the Medical Examiner's Office; that he had the notes of the State chemist who tested the substance at issue; and that these notes indicated that standard procedures were used. Over defendants' objection, the State introduced the lab report of the unavailable State chemist with its conclusion that the substances were cocaine.

The State argues that the toxicologist's report is admissible hearsay under D.R.E. 803(6) as a business record, but acknowledges that, Rule 803(8), the so-called "public records" exception is contrary to its position. The State contends, however, that Rule 803(8) does not apply when a witness is unavailable within the meaning of Rule 804(a)(4). The State also maintains that admission of the toxicology report as a business record under Rule 803(6) does not violate the defendants' confrontation rights under either the state or federal constitutions.

■ Defendants argue that both federal and state law support the conclusion that because the report at issue is inadmissible under the exclusions to the public records exception, Rule 803(8)(B) and (C), the unavailable chemist's report may not be introduced as a business record pursuant to Rule 803(6), and that to do so would violate the defendants' rights "to be confronted by the witnesses against" them.

The most extensive treatment of the competing application of Rules 803(6) and 803(8) at the federal level appears in an early decision on this issue in *United States v. Oates*, 560 F.2d 45 (2nd Cir.1977). In *Oates*, the Court of Appeals thoroughly examined the legislative history of the Federal Rules of Evidence and concluded that the clear congressional intent in enacting the rules was that reports not qualifying under Rule 803(8) "should, and would, be inadmissible against defendants in criminal cases," *Oates*, 560 F.2d at 72, due to the "almost certain collision with confrontation rights which would result from their use against an accused in a criminal case." See, Advisory Committee's Notes, Note to Paragraph (8) of Rule 803, 56 F.R.D. at 313.

The broader implications of *Oates* have been strongly criticized: that a statement not satisfying Rule 803(8) may not be admitted under any other hearsay exception,

and that all public records and reports, regardless of the purpose for which they were prepared, may be encompassed by the exclusions in Rule 803(8). The courts and commentators, however, are in general agreement that reports and records which fall within one of the exclusions to the public records exception and which by their nature raise confrontation issues, such as documents prepared for litigation or documents which require subjective evaluation of data or which lack indicia of trustworthiness, may not be admitted under Rule 803(6), that "Rule 803(6) does not open a back door for evidence excluded by Rule 803(8)." See, 4 Weinstein's Evidence at 803–260; *United States v. Yakobov*, 712 F.2d 20, 26 (2nd Cir.1983); *United States v. Cain*, 615 F.2d 380, 382 (5th Cir.1980); Alexander, "The Hearsay Exception for Public Records in Federal Criminal Trials," 47 Albany L.R. 699, 723 (1983).

In determining in a particular case whether evidence falls within one of the exclusions of the public records exception, the courts at both the state and federal levels have narrowed the focus of the rule to include only those reports and records which present the dangers of inaccurate observation and misrepresentation and of interference with the confrontation rights of criminal defendants. 4 Weinstein's Evidence at 803–256. The courts have not excluded records merely because they come within the literal reach of the public records exclusions.

Defendants in this action rely on subsection (B) and (C) of D.R.E. 803(8) and federal case law. D.R.E. 803(8) does not track the federal rule, but instead follows the Uniform Rules of Evidence which the Delaware Code of Evidence Committee felt was preferable over the federal rule. See, Delaware Uniform Rules of Evidence, Comment to Rule 803 at 526. Other states which have chosen the uniform rule over the federal rule have observed that the uniform rule is clearer, easier to apply and avoids some of the confrontation problems presented by the federal rule. 4 Weinstein's Evidence at 803–275. While the federal rule is substantially different in form and in some respects in substance, constitutional confrontation rights are interwoven into both the uniform and federal rules, and federal case law is persuasive where these rights are implicated. Accordingly, state courts following the uniform rules have looked to the federal courts for guidance. In the absence of relevant Delaware case law on the issue of the scope of D.R.E. 803(8)(B) and (C), interpretation of this state evidentiary provision in light of federal as well as other states' case law is appropriate.

Legislative concern to safeguard the confrontation rights of criminal defendants is evident in both the text and the comments to Rule 803 of the Delaware Rules of Evidence. In the comment to Rule 803, the Committee states:

Rule 803(6) does not make admissible records created for the litigation such as the report of a medical doctor retained to examine a party at the request of the opposing party. *Likewise, a toxicologist's report on the presence of drugs would not be admissible because of Rule 803(8).*

The text of Rule 803(8) of the Delaware Rules of Evidence states:

The following are not excluded by the hearsay rules, even though the declarant is available as a witness:

(8) *Public Records and Reports.* To the extent not otherwise provided in this paragraph, records, reports, statements or data compilations, in any form, of a public office or agency setting forth its regularly conducted and regularly recorded activities, or matters observed pursuant to duty imposed by law and as to which there was a duty to report, or factual findings resulting from an investigation made pursuant to authority granted by law.

Specifically excluded from this exception, however, are the following:

(A) Investigative reports by police and other law-enforcement personnel; (B) in-

vestigative reports prepared by or for a government, a public office or an agency when offered by it in a case in which it is a party; (C) factual findings offered by the government in criminal cases; (D) factual findings resulting from special investigation of a particular complaint, case or incident; (E) any matter as to which the sources of information or other circumstances indicate lack of trustworthiness.

Defendants, in reliance on *Oates*, argue that the toxicologist's report is both an "investigative report" within the meaning of (B) and a "factual finding" within the meaning of (C) and is, therefore, inadmissible under the explicit terms of the rule. In *Oates*, the Court of Appeals noted that an investigative report can encompass scientific testing and that a factual finding is the conclusion of the chemist identifying the substance analyzed. *Oates*, 560 F.2d at 67, footnote 19. The State does not dispute the characterization of the toxicologist's report as either an "investigative report" or a "factual finding", but voices a concern, expressed by law enforcement agencies in general, that interpreting these subsections too broadly will immunize police reports and other official records which have been routinely used in both state and federal courts, and unnecessarily extend and frustrate many criminal trials. 4 Weinstein's Evidence at 803–207, 208. Juxtaposed against these practical considerations are the limitations of the confrontation clause drafted into the exclusions of the public records exception which the defendants assert mandate exclusion of the toxicologist's report at issue in this case.

Courts confronted with these competing concerns have emphasized that records routinely prepared, and not for specific litigation, and factual findings which contain indicia of trustworthiness and reliability, are not encompassed within the exclusions to the public records exception. Although many public records and reports prepared by law enforcement and other government agencies have been excluded from the pro-

tections of 803(8) and introduced at trial against criminal defendants, a toxocologist's report prepared for use in the trial of a criminal defendant accused of a drug violation is not the type of report intended to fall outside even a narrowly circumscribed version of Rule 803(8). Some recent federal and state cases highlight the area of demarcation between what does and what does not fall within the ambit of the exclusions of Rule 803(8), and support the conclusion that the toxicologist's report at issue here is inadmissible hearsay.

The Court of Appeals for the Fifth Circuit recently addressed the issue of the application of federal rule 803(8)(B) to the admissibility of a warrant of deportation form issued by the United States Immigration and Naturalization Service (INS) at the trial of a defendant for illegal entry after deportation. In *United States v. Ouezada*, 754 F.2d 1190 (5th Cir.1985), the Court of Appeals noted that:

> ... a number of courts have drawn a distinction for purpose of Rule 803(8)(B) between law enforcement reports prepared in a routine, nonadversarial setting, and those resulting from the arguably more subjective endeavor of investigating a crime and evaluating the results of that investigation. See, e.g., *United States v. Orozco*, 590 F.2d 789, 793–94 (9th Cir.1979) (admitting computer records of license plates on cars crossing the border due to nonadversarial setting in which information was gathered) *cert. denied*, 439 U.S. 1049, 99 S.Ct. 728, 58 L.Ed.2d 709 (1978); *United States v. Union Nacional De Trabajadores*, 576 F.2d 388, 390–91 (1st Cir.1978) (admitting Marshal's return of service); *United States v. Grady*, 544 F.2d 598 (2d Cir.1976) (admitting reports on firearms serial numbers for Northern Ireland law enforcement agency on basis that they were records of a routine function).

*Ouezada*, 754 F.2d at 1194.

Indeed, the Court of Appeals for the Ninth Circuit in *United States v. Hernandez-Rojas*, 617 F.2d 533 (9th Cir.1980), *cert.*

*denied,* 449 U.S. 864, 101 S.Ct. 170, 66 L.Ed.2d 81 (1980), had already held that a warrant of deportation was properly admissible in an identical action for illegal entry after deportation. The Ninth Circuit concluded that:

> ... the notations on the warrant indicating the defendant's deportation were the result of a ministerial, objective observation, and thus had none of the subjective features of reports made in a more adversarial setting, such as an investigation of a crime scene.

*Ouezada,* 754 F.2d at 1194, citing *Hernandez-Rojas,* 617 F.2d at 535.

Following the reasoning of these cases, and in light of its own earlier decision in *United States v. Stone,* 604 F.2d 922 (5th Cir.1979), in which the court recognized that Rule 803(8) is designed to permit the admission into evidence of public records prepared for purposes independent of specific litigation, the Court of Appeals for the Fifth Circuit concluded in *Ouezada* that:

> In the case of documents recording routine, objective observations, made as part of the everyday function of the preparing official or agency, the factors likely to cloud the perception of an official engaged in the more traditional law enforcement functions of observation and investigation of crime are simply not present. Due to the lack of any motivation on the part of the recording official to do other than mechanically register an unambiguous factual matter (here, appellant's departure from the country), such records are, like other public documents, inherently reliable.

*Ouezada,* 754 F.2d at 1194.

Similarly, in *Byrne v. State,* 654 P.2d 795 (Alaska Ct.App.1982), the Alaska court, interpreting the uniform rule version of 803(8), noted, in response to the defendant's argument that the trial court had erred in admitting documents obtained from a breathalyzer machine, that "before a factual finding would fall within the bar of any of the subsections to Rule 803(8), it would have to be made under circumstances in which the person making the factual finding would foresee its use in litigation and use this knowledge to manipulate the ultimate decision in the litigation." *Byrne,* 654 P.2d at 797. The Alaska court then concluded that, because any effort by a state employee to tamper with the results reported in a breathalyzer packet would be readily discoverable and because the defendant had protection against negligent preparation of the breathalyzer packet under Alaska's broad rules of criminal discovery, the documents were not within any of the exclusions to the public records exception to the hearsay rule. *Id.*

A toxicologist's report, on the other hand, is a report requiring personal and not mechanical evaluation of data, is critical evidence of an essential element of the crime, and is necessarily prepared for use in the trial of a defendant charged with drug violations. The rationale employed to exclude the INS forms and the breathalyzer packet in the above-mentioned cases does not apply under the circumstances of the case presently before this Court.

Accordingly, in *Llewellyn v. State,* 630 S.W.2d 555 (Ark.Ct.App.1982), the Court of Appeals of Arkansas, where the uniform rule is also in effect, held that the trial court had erred in admitting the testimony of a drug laboratory supervisor about the findings of another chemist, who actually received and tested the substances, against a defendant charged with possession of marijuana with intent to deliver. The Court emphasized that the supervisor had no personal knowledge of the drug tests, which were relevant and necessary to the presentation of the State's case, and that the factual findings were the direct result of the investigation of criminal charges against the defendant. *Llewellyn,* 630 S.W.2d at 557. On these grounds, the Court concluded that without doubt the testimony of the substitute chemist was excluded under Rule 803(8).

> Regardless of how trustworthy the supervisor may be in relating general procedures in their handling [drug tests],

the appellant is still denied his right to confront and cross-examine the witness who had personal knowledge of the drug tests conducted in this case.

*Llewellyn,* 630 S.W.2d at 557–558.

In the opinion of the Court, Rules 803(8)(B) and (C) of the Delaware Rules of Evidence apply to the toxicology report admitted as evidence at the defendants' trial. This report was, therefore, inadmissible hearsay. Because the toxicology report related to a crucial element in the State's case, its admission was prejudicial to the defendants. The defendants are, accordingly, in the interest of justice, entitled to a new trial. The Court, having determined that the toxicologist's report is inadmissible under Rule 803(8), need not address the issue of whether admission of this report at trial violated the defendants confrontation rights under either the state or federal constitutions.

█ In order to get around the effect of Rule 803(8), the State argues that D.R.E. 803 expressly limits the exceptions therein to the immateriality of the availability of the declarant, that in this case the witness was unavailable and, therefore, Rule 803(8) does not apply. The Court fails to follow the logic of the State. Rule 803 sets forth 25 exceptions to the hearsay rule dealing with various types of business records, public records and other routinely produced documents, as well as statements considered to have a high degree of trustworthiness such as excited utterances, present sense impressions, and statements relating to mental, emotional or physical condition made for the purpose of medical diagnosis or treatment. Rule 803(24) also allows for the admissibility of statements not specifically covered by an enumerated exception but having equivalent circumstantial guarantees of trustworthiness. In all, the availability of the declarant is immaterial: the statements or documents are admissible regardless of the availability of the declarant to testify. Rule 804, on the other hand, requires that the declarant be unavailable in at least one of five ways before four

particular types of statements will be admissible. The State offers no support for its contention that if a witness is unavailable as defined in Rule 804, what would otherwise be inadmissible under Rule 803 is admissible. The State points to none of the four possible exceptions listed in Rule 804 to justify admission of the toxicology report, nor could the State argue that Rule 803(24) applies without first defeating the application of Rule 803(8).

With respect to the numerous cases cited to the Court by the State in support of the argument that the toxicology report at issue is admissible as a business record, the Court notes that in none was the issue of the public records exception addressed. Not one of the cases cited by the State poses the question of whether a record or report admissible as a business record and inadmissible as a public record may be introduced at trial against a criminal defendant. A review of the cases cited also reveals that the holdings purportedly applicable to the case at bar are distinguishable on their facts.

In response to the State's concern that a ruling by this Court that under any circumstances a lab report could not be admitted under any hearsay exception and the State could not prosecute an individual if any analyzing chemist was not available, the Court notes that its holding today does not immunize all lab reports from admission in criminal trials, but rather is limited to public records or reports prepared as a result of the investigation of criminal charges and admitted at trial against a criminal defendant. Furthermore, if the analyzing chemist in this action were to remain unavailable, the State is not precluded from authorizing a second drug analysis by another chemist whose availability may be relied upon. The quantity of the drug that must be used to conduct a second analysis may be accounted for and should not affect the State's case.

In light of the foregoing, defendants' Motion for a New Trial is granted.

IT IS SO ORDERED.