Phillip EALY, Appellant
(Defendant Below),

v.

STATE of Indiana, Appellee
(Plaintiff Below).

No. 49S00–9503–CR–354.

Supreme Court of Indiana.

Sept. 12, 1997.

Kurt A. Young, Nashville, for Appellant.

Pamela Carter, Attorney General, Lisa M. Paunicka, Deputy Attorney General, Indianapolis, for Appellee.

SELBY, Justice.

Phillip Ealy ("defendant") was convicted of murder and of carrying a handgun without a license. He was sentenced to sixty years for murder and one year for carrying a handgun without a license, the sentences to be served concurrently. He now challenges his murder conviction and sentence. On appeal, he raises four issues: (1) whether the trial court erred by admitting an autopsy report into evidence over defendant's hearsay objections, (2) whether the trial court erred by allowing a police detective to testify, over hearsay objections, about his conversations with individuals during the course of his investigation, (3) whether the evidence was sufficient to sustain the conviction, and (4) whether the sentence is manifestly unreasonable. We affirm.

### FACTS

In the early morning of December 11, 1993, Lamont Puckett was selling cocaine at the bottom of an apartment building stairwell. He was accompanied by his friend, Quincy Dennis. While in the stairwell, Dennis saw defendant standing at the top of the stairs. As defendant descended the stairs he asked, "Lamont ... Hey, man, where's my money at?" (R. at 399.) Without giving Puckett an opportunity to respond, defendant pulled out a handgun and fired. Puckett fell, and defendant ran back up the steps. Puckett died from a gunshot wound to the chest.

Indianapolis Police Detective Thomas Minor investigated the shooting. When Detective Minor spoke to Dennis at the scene, Dennis claimed that he had been at a telephone at the time of shooting and that he heard the shot but did not know what happened. Others in the building also claimed to have heard the shot, but did not see anything. As he questioned people in the neighborhood, Detective Minor learned that the nickname "Philco" had become associated with the shooting. Detective Minor also learned that Philco is defendant's nickname.

A few days after the shooting, Dennis went to Detective Minor's office to give a statement. He told Detective Minor the same information that he testified to at trial, for example describing what he had seen and naming defendant as the gunman. The next day, Detective Minor obtained a warrant for defendant's arrest. After a jury trial, defendant was convicted of the murder of Lamont Puckett. He was also convicted of one count of carrying a handgun without a license.

### I.

Defendant argues that the trial court erred by admitting the autopsy report into evidence. He challenges the foundational elements for admission and claims that the autopsy report from the Marion County Coroner's Office contained inadmissible hearsay. A trial court has broad discretion in ruling on

admissibility of evidence, and on review we will only disturb a trial court's ruling upon a showing of abuse of discretion. *Averhart v. State,* 470 N.E.2d 666, 686 (Ind.1984); Ind.Evidence Rule 103.[1] When the autopsy report was admitted into evidence, defendant objected on the grounds that the document contained hearsay. The judge overruled the hearsay objection and admitted the autopsy report under IRE 902(9)—Self Authentication, Certified Domestic Records of Regularly Conducted Activity.

■ First, defendant challenges admissibility under IRE 902(9). Specifically, defendant argues that the self authentication requirements as set out in the rule were not met. Since defendant did not raise this issue at trial it is waived. *Coates v. State,* 650 N.E.2d 58 (Ind.Ct.App.1995).

■ Next, defendant challenges the autopsy report as inadmissible hearsay. Defendant argues that even if the autopsy report was self-authenticating, this, in and of itself, does not provide an exception to the hearsay rules. This is correct. Self-authentication merely relieves the proponent from providing foundational testimony; it is not a hearsay exception. *Coates,* 650 N.E.2d at 62.

As earlier noted, defendant did offer a contemporaneous objection based on hearsay, which the trial judge overruled. Accepting that an autopsy report contains hearsay, we must determine if it falls under any exception which would make it admissible hearsay. Defendant concedes that prior to the adoption of the Indiana Rules of Evidence, autopsy reports were admissible under the common law public records exception. *See, e.g., McGraw v. State,* 426 N.E.2d 1290 (Ind. 1981). However, defendant argues that the newly adopted IRE 803(8) is more specific and restrictive than the common law rule. It reads:

**Rule 803. Hearsay Exceptions: Availability of Declarant Immaterial**

The following are not excluded by the hearsay rule, even though the declarant is available as a witness....

(8) **Public Records and Reports.** Unless the sources of information or other circumstances indicate lack of trustworthiness, records, reports, statements, or data compilations in any form, of a public office or agency, setting forth its regularly conducted and regularly recorded activities, or matters observed pursuant to duty imposed by law and as to which there was a duty to report, or factual findings resulting from an investigation made pursuant to authority granted by law. The following are not within this exception to the hearsay rule: (a) investigative reports by police and other law enforcement personnel, except when offered by an accused in a criminal case; (b) investigative reports prepared by or for a government, a public office, or an agency when offered by it in a case in which it is a party; (c) factual findings offered by the government in criminal cases; and (d) factual findings resulting from special investigation of a particular complaint, case, or incident, except when offered by the accused in a criminal case.

■ Clearly, autopsy reports fall within the first part of the public records exception. An autopsy report is generally trustworthy and is either "a report of a public office setting forth matters observed pursuant to duty imposed by law and as to which there was a duty to report" or "is a report setting forth factual findings resulting from an investigation made pursuant to authority granted by law."[2] However, IRE 803(8) goes on further to exclude some statements from its exception to the hearsay rule. Defendant argues that the autopsy report falls into IRE

---

1. This opinion includes a discussion comparing the Indiana Rules of Evidence to the Federal Rules of Evidence and the Rules of Evidence of other states. To avoid confusion, hereinafter we have adopted the use of "IRE" for the Indiana Rules, "FRE" for the Federal Rules, the state abbreviation for rules from other states, and no designation when generally discussing a particular rule.

2. *See* Indiana Code §§ 36–2–14–6, 36–2–14–10, and 36–2–14–18 (1993) which require that when someone dies from violence, casualty, or in a suspicious manner, or has been found dead, the coroner is required by statute to conduct an autopsy and make a report.

803(8)(c)[3], which excludes "factual findings offered by the government in criminal cases" from this hearsay exception. Thus, he argues, the autopsy report should have been excluded.

Under a literal reading of IRE 803(8), when a report contains "factual findings" and is offered by the government in a criminal case, either the report itself is admissible, though with the "factual findings" removed, or the entire report is inadmissible. Under either reading, we are presented with two questions: A) What are factual findings?; and B) Even if something is a factual finding, can it still be admissible under IRE 803(8)?

■ This is a case of first impression under our recently adopted Rules of Evidence. IRE 803(8) is a verbatim rendition of Uniform Rules of Evidence ("URE") 803(8). UNIF. RULES OF EVIDENCE § 803(8) (1974). The URE is very similar to the Federal Rules of Evidence ("FRE") in many ways, and URE 803(8) is "quite similar to Federal Rule 803(8), although somewhat more restrictive."[4] 4 JACK A. WEINSTEIN ET AL., WEINSTEIN'S EVIDENCE ¶ 803(8)[02] at 803–275 n. 12 (1996). Furthermore, constitutional confrontation rights are interwoven into both the federal and uniform rules. *See State v. Rivera,* 515 A.2d 182, 184 (Del.Sup. 1986). Thus, in the absence of our own case law on this issue, we may be informed by looking to federal case law and the law of other states concerning the meaning of 803(8) and the confrontation rights as addressed by 803(8). *See Yamobi v. State,* 672 N.E.2d 1344, 1347 n. 4 (Ind.1996) (noting that "in the absence of a unique Indiana policy, constitutional or statutory consideration,

courts in this state should normally construe Indiana evidence rules consistently with the prevailing body of decisions from other jurisdictions interpreting the same rule").

### A.

The first question that we must address is what is meant by the words "factual findings." A "finding" is "[a] decision upon a question of fact reached as the result of a judicial examination or investigation by a court, jury, referee, coroner, etc." BLACK'S LAW DICTIONARY 569 (5th ed.1979). In other words, "a 'finding' or a 'finding of fact' refers to the result or conclusion drawn by an investigator, whether it be a fire inspector, judge, or jury, 'from facts without exercise of legal judgment.'" *Rainey v. Beech Aircraft Corp.,* 827 F.2d 1498, 1510 (11th Cir.1987) (Tjoflat, J., specially concurring), *aff'd in part, rev'd in part, Beech Aircraft Corp. v. Rainey,* 488 U.S. 153, 109 S.Ct. 439, 102 L.Ed.2d 445 (1988)[5]. Judge Miller suggests that "[f]actual findings generally will consist of the product of an investigation that requires the preparer to make an inferential selection between possible truths." 13 R. MILLER, INDIANA PRACTICE, INDIANA EVIDENCE 666 (1995). This would be in contrast to an observation which would require "no subjective interpretation by public official that could taint trustworthiness." *Id.*

While we could stop at this point and posit a rule based solely upon whether a "factual finding" is involved, we do not think that would be wise. The several above approaches are good means of forming some conclusion as to whether something is a "factual finding." However, as the vagueness of

---

3. Defendant makes a generic argument that the autopsy report falls under one or all of the exclusions to 803(8)'s hearsay exception. We think that an autopsy report should properly be analyzed under 803(8)(c). The reports do not fall under 8(a) because those who prepare autopsy reports are not law enforcement personnel. *See United States v. Rosa,* 11 F.3d 315 (2nd Cir. 1993), *cert. denied* 511 U.S. 1042, 114 S.Ct. 1565, 128 L.Ed.2d 211 (1994). The reports do not fall under 8(b), at the very least because they are not offered by the same entity that prepared them. Finally, the reports do not fall under 8(d) because they do not result from "special investigation of a particular complaint, case, or incident" (examples of which would be administrative tri-

bunal hearings, *see Zatarain v. WDSU–Television, Inc.,* 673 So.2d 1181 (La.Ct.App.1996)).

4. FRE 803(8)(C), the comparable section to IRE 803(8)(c), admits "reports ... of public offices or agencies, setting forth ... (C) in civil actions and proceedings and against the Government in criminal cases, factual findings resulting from an investigation made pursuant to authority granted by law." Thus, both the FRE and the IRE exclude from the hearsay exception factual findings offered by the Government in criminal cases.

5. The Supreme Court agreed with the concurrence as to the broad reach of FRE 803(8)(C).

the definitions suggests, any determination as to whether something is a factual finding would be difficult to make, highly subjective, and difficult to review. For example, commentators have noted that the distinction between a statement of fact (an observation) and opinion is, at best, one of degree because "[a]ll statements in language are statements of opinion, i.e., statements of mental processes or perceptions. So-called 'statements of fact' are only more specific statements of opinion." 4 WEINSTEIN'S EVIDENCE, at 701–6 (quoting W. KING & D. PILLINGER, OPINION EVIDENCE IN ILLINOIS 4 (1942)). Furthermore, while discussing the long time American court attempt to allow witnesses to state facts but not inferences, conclusions, or opinions, King and Pillinger commented that "[s]uch a rule is quite impossible of application: all statements contain inferences." *Id.* at 701–5. We think that any attempt to separate factual findings from observations is, if not the same problem, at least a closely related problem. The arbitrary line that would need be drawn between "factual finding" and "observation" is not one that we feel can or need be drawn for purposes of this case.

### B.

Rather than attempt to draw such an arbitrary line, we instead continue our analysis so that we may answer the second question of whether a "factual finding" such as an autopsy report may be admitted under 803(8)'s hearsay exception. In other words, what is IRE 803(8)(c) meant to exclude?

The Advisory Committee on the FRE noted their worry about using public records or reports that contain factual findings in a criminal case because of an "almost certain collision with confrontation rights which would result from their use against the ac-

cused in a criminal case." Rules of Evidence for the United States Courts and Magistrates, 56 F.R.D. 183, 313 (1973). In ruling on the public records hearsay exception, courts have disagreed on the meaning and extent of the exclusionary language of exception· 803(8). 4 WEINSTEIN'S EVIDENCE, at 803–289.

At one extreme is an early Second Circuit decision interpreting FRE 803(8). In *United States v. Oates,* 560 F.2d 45 (2d Cir.1977), the Second· Circuit addressed the question· of whether the trial court erred by admitting into evidence two documentary exhibits, absent their author, which were crucial to the government's case and that pertained to a U.S. Customs Service chemist's report on a seized substance (the documents concluded that the substance was heroin). The Second Circuit analyzed the language of the rule and the legislative hearings concerning the rule. The Court noted: "We thus think it manifest that it was the clear intention of Congress to make evaluative [factual finding] and law enforcement reports absolutely inadmissible against defendants in criminal cases. Just as importantly, it must have been the unquestionable belief of Congress that the language of FRE 803(8)(B) [6] and (C) accomplished that very result." *Id.* at 72. The Court concluded that, if the records fit under either FRE 803(8)(B) or (C) and were sought to be introduced against the accused in a criminal case, then the records were inadmissible under any hearsay exception. *Id.* at 84.[7]

Courts and commentators have criticized the holding in *Oates.*[8] "The · language of *Oates* was unjustified" in that "[a]pplied literally, for example, it would have destroyed fingerprinting and other modern police practices relying on official records, computers and other scientific advances." 4 WEINSTEIN at 803–289. The cases criticizing or diverg-

---

6. FRE 803(8)(B) admits "records ... of public offices or agencies, setting forth ... (B) matters observed pursuant to duty imposed by law as to which matters there was a duty to report, excluding, however, in criminal cases matters observed by police officers and other law enforcement personnel." This is analogous to IRE 803(8)(a).

7. We decline to address whether inadmissibility under IRE 803(8) precludes admissibility under another exception.

8. Even the Second Circuit has withdrawn from its holding. *See United States v. Yakobov,* 712 F.2d 20 (2nd Cir.1983). Furthermore, in a decision the year before *Oates,* the Court held that records listing weapons found by police were admissible under FRE 803(8)(B) because they were strictly routine records and did not "begin to prove the Government's entire case." · *United States v. Grady,* 544 F.2d 598, 604 (2d Cir.1976).

ing from *Oates* can be exemplified by the Fifth Circuit in *United States v. Quezada,* 754 F.2d 1190 (5th Cir.1985). The evidence in question was an Immigration and Nationalization Service form used to prove that the defendant had previously been arrested and deported. *Id.* at 1193. Disagreeing with *Oates'* narrow reading of the rule, the Court held that the documents were admissible under FRE 803(8)(B). The court concluded that "[i]n the case of documents recording routine, objective observations, made as part of the everyday function of the preparing official or agency, the factors likely to cloud the perception of an official engaged in the more traditional law enforcement functions of observation and investigation of crime are simply not present." *Id.* at 1194; *see also United States v. Enterline,* 894 F.2d 287 (8th Cir.1990) (holding that a computer report containing identification numbers of stolen vehicles was admissible because it was not prepared in an adversarial situation, nor in one where there was opportunity for subjective observation by law enforcement personnel); *United States v. Dancy,* 861 F.2d 77 (5th Cir.1988) (holding that a fingerprint card was admissible because it was prepared in a situation unrelated to a criminal investigation); *United States v. Hardin,* 710 F.2d 1231 (7th Cir.1983) (holding that data obtained from DEA field agents was admissible because the collection was done for non-litigative purposes and thus posed little incentive for misrepresentation); *United States v. Orozco,* 590 F.2d 789 (9th Cir.1979) (holding that cards listing license numbers of cars passing through a border stop were admissible because they were routine and non-adversarial in nature).

Thus, courts have been willing to go beyond the literal language of FRE 803(8)(B) in order to effect a more reasonable and workable rule. Rather than focusing just on the language of the rule, courts have instead focused on the setting of the investigation and/or report. If the police or governmental report was made in a non-adversarial situation and for non-litigative purposes, then courts generally conclude that the report is trustworthy within the confines of 803(8)'s hearsay exception because there was little motivation for fabrication.

We conclude, however, that just as we could not rest our decision at the "factual finding" point, neither can we rest our decision at this point because IRE 803(8)(c) addresses a slightly different concern than does FRE 803(8)(B). Therefore, we need to continue our analysis one step further to consider how other courts have ruled on factual findings.

A few state courts, which follow versions of the URE, have squarely addressed the issue of the admissibility of certain "factual findings." For instance, in *Byrne v. State,* 654 P.2d 795 (Alaska.Ct.App.1982), the Alaska Court of Appeals addressed whether a "breathalyzer packet"[9] was properly admitted under ARE 803(8). The court concluded that, while the packet contained "factual findings," the findings in the packet still fit under the hearsay exception of ARE 803(8). *Id.* at 797. The court noted that "before a factual finding would fall within the bar of any of [the exclusions of 803(8)], it would have to be made under circumstances in which the person making the factual finding could foresee its use in litigation and use this knowledge to manipulate the ultimate decision in the litigation." *Id.* Because no state employee could link a specific packet to a specific defendant, there would be no reason or opportunity to tamper with the findings. Thus, the court found no reason to exclude the packet.

The Delaware Superior Court in *State v. Rivera,* 515 A.2d 182 (Del.Sup.1986) addressed the issue of whether a toxicology report was admissible without the presence of the chemist who prepared the report. The court examined *Oates, Quezada,* and *Byrne* before it concluded that the toxicology report could not be admitted under DRE 803(8). *Id.* at 186. The court did not come to this conclusion, however, solely because the report contained factual findings. Rather, the court concluded that the report was inadmissible because it "is a report requiring

9. The breathalyser packet contained six documents, certifying, among other things, that the machine was properly calibrated.

personal and not mechanical evaluation of data, is critical evidence of an essential element of the crime, and is necessarily prepared for use in the trial of a defendant charged with drug violations." [10]

The Second Circuit, under the FRE, came to a similar conclusion in *United States v. Pinto–Mejia*, 720 F.2d 248 (2d Cir.1983), *modified on other grounds*, 728 F.2d 142 (1984). In *Pinto–Mejia*, the court ruled that a Venezuelan Ministry of Transportation and Communications, Bureau of Maritime Transportation and Traffic certificate was inadmissible under FRE 803(8)(C). In so ruling, the court noted that the certificate resolved a critical and disputed issue. *Id.* at 256. Furthermore, the court noted that the certificate was prepared in anticipation of litigation. *Id.* at 253, 258. Thus, the court held that the report was made inadmissible by FRE 803(8)(C).

To conclude, in discussing evidence rule 803(8) and the foundations upon which it is based, courts have voiced several concerns. The first of these is that 803(8) is meant as a watch guard against reports made in an adversarial setting because there is a possible motive to fabricate the contents of the report, and, therefore, the preparer of the report must be in court for cross-examination purposes. The second concern is that factual findings that pertain to a critical and contested issue in the case are worrisome without the presence of the author in court for cross-examination.

■ Therefore, a trial court must employ the following evaluative process when called upon to determine whether a piece of evidence is inadmissible under IRE 803(8)(c). First, the trial court must consider whether the "findings" objected to address a materially contested issue in the case. If they do not, then the safeguards provided by the rule sufficiently protect the defendant. For example, the contested evidence must still evince trustworthiness in all respects. Evid.R. 803(8). Furthermore, the public records and reports which would fall under IRE 803(8)(c) would be prepared by persons who are charged with that duty by law. In the face of such public duty and exposure, they have every incentive to properly do their job. "The hearsay exception for public records and reports is based on the assumption that public officials perform their duties properly without motive or interest other than to submit accurate and fair reports." 13 R. MILLER, INDIANA PRACTICE, INDIANA EVIDENCE 652 (1995).

If, however, the "findings" which are objected to do address a material and contested issue, then the trial court must make further considerations. The second step which the trial court must take is to consider the nature of what is objected to. If the trial court can *clearly* find that a record or report contains no factual findings, then the evidence is not made inadmissible by 803(8)(c). Such evidence could be simple listings, or a simple recordation of numbers, and the like. However, if the evidence does or may contain "factual findings," then the court must address a third and final step. The court must determine whether the report was prepared for advocacy purposes or in anticipation of litigation. If it was not, then the evidence is admissible. As with the first step, the defendant is adequately protected by the rule and the presumptions upon which it is based. If the defendant can show that there is reason to doubt the trustworthiness of the report, then the rule protects him. If the defendant only disagrees with the conclusions, then defendant can challenge the conclusions through expert opinion or otherwise. If, however, the report was prepared for advocacy purposes, then the contested findings are inadmissible. It is in that situation, where a report's findings address a materially contested issue in the case and were pre-

---

**10.** *Oates* could be narrowed to arrive at a conclusion similar to *Rivera* in that *Oates* also concerned a toxicologist's report admitted without the preparer of the report. Furthermore, the *Oates* court specifically noted the "unquestionably crucial character of these documents, constituting as they do the only evidence in the case establishing that the confiscated substance was heroin." *Oates*, 560 F.2d at 65. *See also Llewellyn v. State*, 4 Ark.App. 326, 630 S.W.2d 555 (1982) (holding that a toxicologist's report, without the presence of the preparer of the report, was inadmissible under Arkansas' version of URE 803(8) when used to convict a defendant of drug possession).

pared for advocacy purposes, when the findings are inadmissible hearsay. We believe that this evaluation respects both the confrontation rights of the defendant and the purpose of a public records hearsay exception.[11]

■ As applied to the case at bar, the autopsy report was admissible. Under the first step in the analysis, there is nothing in the autopsy report which addresses a materially contested issue in the case. Primarily, there is no argument over the cause of death. Though defendant contends that the autopsy report's conclusion that a gunshot wound caused death was prejudicial because it strengthened Quincy Dennis' testimony, defendant never argues that the cause of death was anything other than by gunshot. Furthermore, the other statements in the report are not disputed, and, in fact, some were used to attack Dennis' testimony (for example by showing that there was no alcohol in victim's body as Dennis claimed and to show that the angle of the bullet entry did not conform with Dennis' testimony). The only issue in dispute was who shot the victim, an issue which the report does not address. Therefore, neither the report nor portions of it were made inadmissible by IRE 803(8)(c).

Assuming, for the sake of explanatory analysis only, that the report addressed a materially contested issue, we would next consider whether the report contained any "factual findings." Because the autopsy report may contain such findings, we would proceed to the third and final step of determining whether the report was prepared for advocacy purposes. As a general rule, the examiners who prepare the autopsy report do so for non-advocacy reasons. They are charged by law with the job of producing public documents relating to deaths. They do not know if a particular case will result in trial, nor do they know who a potential defendant might be. They are board certified pathologists[12] who use their knowledge to examine the bodies and write the reports. They have every incentive to do a proper job

and their impartiality is assumed. There is no evidence in the record to prove any of these presumptions otherwise. In conclusion, this autopsy report meets the admissibility requirements of IRE 803(8) and is not made inadmissible by IRE 803(8)(c).

■ This result conforms with existing case law on the admissibility of autopsy reports. For example, it is relatively well established that the admission of autopsy reports does not violate a defendant's confrontation rights. The First Circuit has held that the introduction of an autopsy report for the purpose of proving the cause of death, without benefit of the medical examiner who prepared the report, did not violate the Confrontation Clause of the U.S. Constitution. *Manocchio v. Moran*, 919 F.2d 770 (1st Cir.1990). After examining each portion of the report (including the report's conclusion of cause of death), the Court held that the autopsy report contained "sufficient 'particularized guarantees of trustworthiness' that its admission in the absence of live testimony by its preparer did not offend the Confrontation Clause." *Id.* at 777. *See also United States v. Rosa*, 11 F.3d 315 (2d Cir.1993) (holding that the reported observations in an autopsy report "bear sufficient indicia of reliability to satisfy the demands of the Confrontation Clause").

Furthermore, we note that our decision today is consistent with our own previous case law. In Indiana prior to the IRE, this Court has held that autopsy reports were admissible under the common law public documents exception to the hearsay rule. *See McGraw v. State*, 426 N.E.2d 1290 (Ind. 1981); *Bean v. State*, 267 Ind. 528, 371 N.E.2d 713 (1978); *Collins v. State*, 267 Ind. 233, 369 N.E.2d 422 (1977). The exception applied even in situations where the preparer of the report was not present in court to testify. *See McGraw*, 426 N.E.2d at 1291; *Wright v. State*, 266 Ind. 327, 363 N.E.2d 1221 (1977). Thus, we have before held that

**11.** *See* 5 JACK A. WEINSTEIN ET AL., WEINSTEIN'S EVIDENCE § 803.13[1] at 803–85 (2d ed.1997) which notes the dual principles upon which the public records exception is premised: necessity and trustworthiness.

**12.** I.C. § 36–2–14–6(e) (1993).

autopsy reports could be admitted under the public records and documents exception to hearsay, and we still do.

 Finally, in a separate but related argument, defendant contends that the trial court erred in allowing the expert witness to testify to his opinions and conclusions based upon his reading of the autopsy report. Defendant is incorrect. The IRE specifically allows that experts "may testify to opinions based on inadmissible evidence, provided that it is of the type reasonably relied upon by experts in the field." Evid.R. 703. Prior to the enactment of the IRE, we long held it proper for an expert to give an opinion based upon an autopsy report prepared by another. *See Lockhart v. State,* 609 N.E.2d 1093, 1098 (Ind.1993). We see no reason to change that now. Furthermore, given that the autopsy report was admissible, the trial court did not err in allowing the expert to base his opinion upon it.

## II.

Defendant argues that the trial court erred when it allowed Detective Minor to testify, over defendant's repeated hearsay objections, as to the contents of his communications with potential witnesses during the course of his investigation.

 In *Craig v. State,* 630 N.E.2d 207 (Ind.1994), this Court set forth the analysis to determine whether out-of-court statements made to police officers during their investigation are admissible as non-hearsay evidence. If the State argues that the statement is not being used to prove the truth of the matter asserted, but rather that it is being used for a different purpose, then the court should consider whether the suggested purpose is relevant to some issue in the case and whether the danger of prejudice outweighs its probative value. *Id.* at 211. When the State argues that the non-hearsay purpose is to show the propriety of the police initiating an investigation, and that issue is irrelevant, then the admission of the state-

ment was error. *Bonner v. State,* 650 N.E.2d 1139, 1141 (Ind.1995). However, if the erroneously admitted evidence produced no prejudice, then there is no cause for reversal. *Id.*

 In this case, Detective Minor was describing how he came to be investigating defendant as a possible suspect in this case. Detective Minor testified that he learned that the name "Philco" was associated with the crime. He did not testify about any particular statements, and he did not testify that anyone had named "Philco" as the gunman. Detective Minor further testified that he discovered that "Philco" was Phillip Ealy. This evidence was irrelevant to any issue in the case other than to show that defendant was involved in the crime. Therefore, the evidence was inadmissible, either as irrelevant or as hearsay. However, defendant was not prejudiced as Quincy Dennis' testimony was what provided the essential evidence against defendant.[13]

## III.

 Next, defendant argues that there is insufficient evidence to support the conviction. He argues that if the autopsy report and Detective Miller's testimony are inadmissible, then the only direct evidence to support the conviction is the testimony of Quincy Dennis. Defendant argues that Dennis' testimony at trial was inherently improbable, equivocal, uncorroborated, and riddled with inconsistencies.

 In reviewing the sufficiency of the evidence, an appellate court neither reweighs the evidence nor reviews the credibility of the witnesses. We look only to the evidence most favorable to the verdict, along with all reasonable inferences to be drawn therefrom. If there is substantial evidence of probative value from which the jury might reasonably have found the defendant guilty beyond a reasonable doubt, we will sustain the judgment. *Kingery v. State,* 659 N.E.2d

---

**13.** Defendant also argues that Detective Minor's testimony that there were people who "heard the shot, but didn't see anybody leaving the area or heard any cars," (R. at 565–66), bolstered Dennis' testimony that the assailant did not leave the building. However, Detective Minor was actually relating a lack of perception by these witnesses. He continued, "They didn't actually witness the shooting." We do not see how this bolstered Dennis' testimony.

490 (Ind.1995), reh'g denied. We will not impose on the jury's responsibility to assess the credibility of the witness unless "confronted with 'inherently improbable' testimony, or coerced, equivocal, wholly uncorroborated testimony of 'incredible dubiosity.'" *Bedwell v. State,* 481 N.E.2d 1090, 1092 (Ind. 1985).

Dennis gave a total of four statements to the police. He gave one on the day of the shooting, a second three days following the shooting, a third at a taped deposition on May 6, 1994, and the fourth during his testimony at trial. In his first statement, Dennis claimed that he was at a phone and did not witness the shooting. In the other three statements, Dennis claimed to have seen defendant shoot Puckett. However, these three statements did contain some inconsistencies. The jury was aware of these inconsistencies, yet the jury chose to believe Dennis' testimony, and at trial Dennis clearly identified defendant as the person who shot Puckett. Defendant is now asking us to judge the credibility of this witness. We will not do so. We find that there is sufficient evidence to support the conviction.

## IV.

Finally, defendant argues on several grounds that his sentence must be vacated. The trial judge sentenced him to concurrent sentences of sixty years for murder and one year for the weapons charge.

■■■ Defendant first argues that the trial court erred by not pronouncing sentence in defendant's presence as required by Indiana Code Section 35–38–1–4(a). This contention is erroneous. During the sentencing hearing, at which defendant was present, the trial judge did say "I am prepared at this point to impose sentence. The jury having found you guilty of murder the Court finds that there are aggravating circumstances to warrant an increase in the presumptive sentence to sixty (60) years." (R. at 758). Although this was not the clearest sentencing statement, it was sufficient to comply with the statutory requirement.

Next, defendant argues that the sentencing statement was insufficient and that the trial judge did not properly weigh the aggravators and mitigators. At sentencing, the trial court found the following aggravating circumstances: (1) a misdemeanor firearms violation, (2) a prior misdemeanor possession of cocaine conviction, (3) a prior misdemeanor disorderly conduct conviction, and (4) a tendency to resort to violence. The court found as mitigating that defendant lacked a lengthy criminal history. The trial court then stated: "So, the Court will impose [sic] find those to be aggravating circumstances which are out weighed by any mitigating circumstances." (R. at 758.)

■■■ Defendant argues that since the court stated that the aggravating circumstances *are outweighed by* the mitigating circumstances, defendant should receive no more than the presumptive sentence on the murder count. However, the court had earlier clearly stated that an increase in the presumptive sentence was warranted. In examining the sentencing statement in its entirety, we are convinced that the "out weighed by" language was merely a slip of the tongue, and that the trial judge meant to say that the aggravating circumstances outweighed the mitigating circumstances. Also, the sentencing statement was not insufficient and conclusive. The trial court properly identified all significant aggravating and mitigating factors, explained each of them, and weighed them to reach a sentencing decision. *See Evans v. State,* 563 N.E.2d 1251, 1254 (Ind.1990).

Lastly, defendant argues that the sentence he received, the maximum sentence for murder, is *manifestly unreasonable.* Defendant contends that because he is a 35–year–old man with only three prior misdemeanor convictions, and because the trial court's conclusion that defendant has a tendency to resort to violence is unsupported by the record, the sentence was unreasonable.

■■■ Sentencing decisions rest within the sound discretion of the trial court, and we will review sentencing only for abuse of discretion. *Sims v. State,* 585 N.E.2d 271 (Ind. 1992). A sentence which is authorized by statute will not be revised on appeal unless the sentence is manifestly unreasonable. Ind. Appellate Rule 17(B).

Only one aggravating factor is required to support an enhanced sentence. *Fugate v. State*, 608 N.E.2d 1370, 1374 (Ind. 1993). Although defendant did not have a lengthy criminal history, his three convictions are alone enough to support an enhanced sentence. *Id.* Furthermore, there is sufficient evidence to support the trial judge's finding that defendant has a tendency to resort to violence. Together with the current crime, defendant has three times been charged and twice convicted of carrying a handgun without a license. Additionally, the disorderly conduct conviction resulted from an incident in which defendant attempted to grab a gun from a police officer's holster. Furthermore, evidence was presented at the sentencing hearing that six weeks prior to the murder, defendant was arrested for shooting at a sixteen-year-old boy in the same stairway where he shot Mr. Puckett. Although a record of arrest, without more, may not be properly considered as evidence of prior criminal history, "such information may be relevant to the trial court's assessment of the defendant's character in terms of risk that he will commit another crime." *Scheckel v. State*, 620 N.E.2d 681 (Ind.1993). Thus, although we would have preferred a more detailed sentencing statement, we find that the trial court did not abuse its discretion. The sentence was not manifestly unreasonable.

## CONCLUSION

The conviction and sentence are affirmed.

SHEPARD, C.J., and DICKSON, SULLIVAN and BOEHM, JJ., concur.