OPINION
Pursuant to leave granted under App. R. 5(A), defendant-appellant, Lloyd Wyke, appeals from a judgment of the Franklin County Municipal Court finding him guilty of three counts of falsification in violation of R.C. 2921.13(A)(2), (A)(3), and (A)(7). Because defendant's assignments of error lack merit, we affirm.
By complaint filed October 9, 1997, defendant was charged with one count of falsification under R.C. 2921.13(A)(3) in connection with defendant's filing a police report with the Upper Arlington Police Department, which alleged that his ex-girlfriend, Catherine Vance, committed theft, domestic violence, and assault against him. By complaint filed November 20, 1997, defendant was charged with two additional counts of falsification under R.C. 2921.13(A)(2) and (A)(7) relating to the same report. The trial court consolidated all of the counts because they arose from the same incident, and defendant entered not guilty pleas to all three charges. A jury trial resulted in a finding of guilty on all three counts, and defendant was sentenced accordingly.
Defendant appeals, assigning the following errors:
 ASSIGNMENT OF ERROR NUMBER ONE: THE DEFENDANT WAS DEPRIVED OF HIS CONSTITUTIONAL RIGHTS TO A FAIR TRIAL AND DUE PROCESS OF LAW WHEN THE STATE INTRODUCED EVIDENCE OF OTHER ACTS OF THE DEFENDANT THAT WERE PREJUDICIAL IN NATURE, INADMISSIBLE ON HEARSAY AND OTHER GROUNDS AND BY THE PRESENTATION OF OPINION TESTIMONY AND OTHER EVIDENCE THAT WAS IMPROPERLY ADMITTED.
 ASSIGNMENT OF ERROR NUMBER TWO: THE TRIAL COURT ERRED WHEN IT FAILED TO GRANT A BRIEF CONTINUANCE SO THAT THE DEFENDANT COULD PRESENT A WITNESS WHOSE TESTIMONY BECAME RELEVANT AS A RESULT OF THE PROSECUTOR'S CROSS-EXAMINATION OF THE DEFENDANT.
 ASSIGNMENT OF ERROR NUMBER THREE: THE DEFENDANT WAS DEPRIVED OF HIS RIGHT TO THE EFFECTIVE ASSISTANCE OF COUNSEL, IN VIOLATION OF HIS CONSTITUTIONAL RIGHTS, DUE TO THE ACTS AND OMISSIONS OF COUNSEL.
According to defendant's trial testimony, Catherine Vance on June 24, 1997, assaulted him and took his wallet from his vehicle while he was standing at a pay telephone in Upper Arlington. Two men waiting to use the telephone witnessed the attack, and after the incident defendant obtained the first name and telephone number of one of the witnesses. Over one month after the alleged attack occurred, defendant on August 11, 1997, filed a report in Upper Arlington implicating Vance.
The purported witness, Shawn Blades, directly contradicted defendant by testifying that he did not witness the attack, and that defendant asked him to fabricate a statement to police officials in order to gain leverage against Vance relative to telephone harassment charges Vance had filed against defendant in July 1997. Similarly, Vance denied the incident and stated she filed telephone harassment charges against defendant in Columbus before defendant filed the charges against her. Indeed, defendant conceded at trial that he filed charges against Vance in retaliation for her filing telephone harassment charges against him, and for her failing to repay money he previously had loaned her.
In appealing his conviction, defendant's first assignment of error raises six separate evidentiary challenges relating to the testimony of various witnesses. Defense counsel did not object to any of the testimony subject of defendant's assigned error. Generally, absent plain error, "an appellate court will not consider any error which counsel for a party complaining of the trial court's judgment could have called but did not call to the trial court's attention at a time when such error could have been avoided or corrected by the trial court." State v. Campbell (1994), 69 Ohio St.3d 38, 40 (quoting State v. Childs (1968), 14 Ohio St.2d 56, paragraph three of the syllabus). Nonetheless, Crim.R. 52 allows waived errors to be considered if they rise to the level of plain error. Plain error should be recognized only under exceptional circumstances and to prevent a manifest miscarriage of justice. State v. Long (1978), 53 Ohio St.2d 91, paragraph two of the syllabus. The error complained of must be of such a nature that the outcome of the trial would clearly have been otherwise but for the error. Id.
Defendant's first argument under his first assignment of error asserts the prosecutor improperly elicited hearsay and character evidence from Robin Sowry, a secretary at the Upper Arlington City Attorney's Office and a rebuttal witness for the prosecution. Sowry testified that shortly after defendant unsuccessfully attempted to question the prosecutor by telephone about defendant's pending falsification case, a person purporting to be a female television news reporter telephoned the prosecutor's office and requested to speak to the prosecutor. Sowry stated she later learned from the prosecutor that the caller was defendant, who disguised his voice in order to speak to the prosecutor.
Evid.R. 602 prohibits witnesses from testifying to matters which are not within their personal knowledge. Sowry's testimony regarding defendant's first telephone call was proper: she had personal knowledge of defendant's identity regarding that call, having answered the telephone and ascertained defendant's identification during the call. However, Sowry derived her knowledge of defendant's identity as the second caller, including defendant's attempt to disguise his voice, solely from the prosecutor's out-of-court statement, which is inadmissible hearsay. Witnesses cannot educate themselves by obtaining hearsay statements and then claim personal knowledge of the hearsay. See St. Paul Fire Marine Ins. Co. v. Ohio Fast Freight, Inc. (1982), 8 Ohio App.3d 155; Tekavec v. Sears, Roebuck and Co. (Nov. 10, 1994), Cuyahoga App. No. 66370, unreported, appeal not allowed, 71 Ohio St.3d 1503 (citing St. Paul Fire and Marine, supra).
Sowry's rebuttal testimony also improperly related to the jury other instances of defendant's untruthful conduct. Evid.R. 404(A) generally precludes the introduction of evidence relating to a person's character for the purpose of proving that the person acted in conformity with such conduct on a particular occasion. Sowry's testimony allowed an inference that because defendant committed an untruthful act, he was more likely to have falsified the police report.
The city presents a number of arguments to support the admission of Sowry's testimony. We need not address those contentions, however, because even if the trial court erred in admitting Sowry's testimony, the error does not rise to the level of plain error. The record contains sufficient unrelated evidence which undermines defendant's version of the events. Vance, the alleged assailant, and Blades, defendant's purported witness, both denied that the attack occurred. Indeed, Blades testified that defendant unsuccessfully attempted to persuade him to issue a false statement regarding the attack. While defendant attempted to impeach Vance's testimony, defendant failed to explain Blades' testimony after Blades purportedly witnessed the attack and agreed to provide a statement to police officials on defendant's behalf. Moreover, the court issued a general limiting instruction admonishing the jury not to consider "other acts" evidence for the purpose of proving that defendant acted in conformity with those acts. Given all of the foregoing, no manifest miscarriage of justice arises from Sowry's rebuttal testimony.
Defendant's second argument under the first assignment of error contends that the prosecution introduced improper rebuttal testimony from Danny Harness, an employee and records custodian for the Franklin County Sheriff's Department Identification Bureau.
Prior to Harness's rebuttal testimony, defendant testified on direct examination that Vance's June 24, 1997 attack left scars on his chest; he even showed the scars to the jury. During cross-examination, the prosecution asked defendant if, during the August 7, 1997 slating process accompanying his arrest for telephone harassment of Vance, he provided the Franklin County Sheriff's Department any information relating to the scars Vance allegedly inflicted on his chest. Defendant testified that police officials did not ask him about scars during the slating period. The prosecution called Harness as a rebuttal witness in order to demonstrate that, contrary to defendant's assertion, slating officials asked defendant about scars on his chest.
Specifically, on rebuttal Harness testified that during slating the arrestee is asked questions corresponding to each space on the master history sheet; that because the master history sheet contains a space concerning new scars, processing officials not only ask the arrestee about the existence of new scars during slating, but fill in the appropriate response. Harness then read to the jury defendant's master history sheet arising from his slating on the arrest for telephone harassment, which reflected that defendant had "no new scars or [tattoos]" at the time of his slating procedure. (Tr. 280.) The history sheet was later admitted into evidence.
Defendant contends that Harness's testimony and the master history sheet on which Harness's testimony was based constitute inadmissible hearsay, as well as inadmissible character evidence demonstrating that defendant provided untruthful information to police officials during the telephone harassment slating procedure.
Regarding defendant's character evidence argument, Harness's rebuttal testimony did not concern a specific instance of defendant's untruthful conduct, as generally prohibited by Evid.R. 608(B). Rather, Harness's testimony and the accompanying master history sheet illustrate a statement defendant made to police officials prior to defendant's trial testimony concerning the subject matter of that testimony: the existence of new scars on defendant's chest. According to Harness, the telephone harassment master history sheet shows that less than two months after Vance allegedly inflicted serious wounds on defendant's chest, defendant told police officials he had no new scars. If the jury believed Harness, defendant's statement during slating made four days prior to his filing charges against Vance directly contradicts defendant's trial testimony that he had new scars when he filed those charges. Accordingly, Harness's testimony was permissible as extrinsic evidence of defendant's prior inconsistent statement, as permitted by Evid.R. 613(B).
"Pursuant to Evid.R. 613(B), when extrinsic evidence of a prior inconsistent statement is offered into evidence, a foundation must be established through direct or cross-examination in which (1) the witness is presented with the former statement, (2) the witness is asked whether he made the statement, (3) the witness is given an opportunity to admit, deny, or explain the statement, and (4) the opposing party is given an opportunity to interrogate the witness on the inconsistent statement." State v. Keith (1997), 79 Ohio St.3d 514, 525. The city satisfied all of those foundational requirements here.
While the city properly established a foundation for using defendant's prior inconsistent statement, the method of proving that statement presents hearsay concerns which defendant also raises as error. Defendant's master history sheet was prepared out of court by an interviewer who did not testify at trial. The city responds that even if the interviewer's statement constitutes hearsay, it is excepted from the hearsay rule as a record of regularly conducted activity under Evid.R. 803(6).
Ohio and federal courts have held that Evid.R. 803(6), as well as Evid.R. 803(8) which concerns a hearsay exception for public records, do not permit the state to introduce police records and reports to prove the substance of those records or reports in criminal cases because that procedure violates the hearsay rule and the accused's constitutional right of confrontation. See, e.g., State v. Spinks (1992), 79 Ohio App.3d 720, appeal not allowed 65 Ohio St.3d 1440; United States v. Brown (C.A.11, 1993), 9 F.3d 907, 911, certiorari denied, 115 S.Ct. 152
(concluding that "[substantially similar Fed. Evid.R.] 803(6) cannot be used as a back door to admit evidence excluded by [Fed. Evid.R.] 803(8)(B)").
The Ohio Supreme Court, however, has noted an exception to the general rule: when a police report does not recite an officer's observations made as part of an investigation of criminal activities, the reporting officer need not be called as a witness at trial. State v. Ward (1984), 15 Ohio St.3d 355, 358; State v. Beam (1991), 77 Ohio App.3d 200, 207. The exception rests on the principle that police records prepared in a routine, non-adversarial setting which does not involve the subjective evaluation of a crime presents police officials no incentive other than to mechanically register unambiguous factual matters. Such records are, like other public documents, "highly likely to be reliable." Ward, supra, at 358 (concerning intoxilyzer calibration logs); see, also, Brown, supra, at 911-912 (concerning weapon property receipt); United States v. Box (C.A.5, 1995),50 F.3d 345, 356 (concerning jail cards, arrest reports, record bail books, and jail logs).
Similarly, the master history sheet introduced into evidence here merely contains facts related to police officials as the arrestee is processed for incarceration. In that regard, the interviewer has no incentive to do anything other than mechanically record the relevant information on the master history sheet. Accordingly, the sheet falls within the noted exception. Defendant's second argument under his first assignment of error is without merit.
Defendant's third argument under the first assignment of error challenges the rebuttal testimony offered by Dana Rose, defendant's supervisor. Prior to Rose's testimony, defendant cross-examined investigating officer John Priest about Priest's contact with defendant arising from code violations on Priest's rental property. The prosecutor objected to defendant's inquiry, asserting it involved a collateral issue because police decided to file the complaint against defendant before defendant's contact with Priest concerning the code violations. The trial court allowed defendant's inquiry solely as a means of demonstrating Priest's bias or prejudice against defendant.
During defendant's case-in-chief, defendant also testified about his contact with Priest regarding the code violations. On cross-examination, defendant stated he called Priest at home concerning the violations, and the telephone call would appear in the case file. When confronted with the property's case file history log which did not reflect defendant's telephone call to Priest's home, defendant indicated that he was not required to log all official telephone contacts with homeowners. Rose testified on rebuttal that, contrary to defendant's testimony, the office procedure requires claims investigators to log all telephone calls with property owners.
Defendant contends that Rose's testimony constitutes both improper impeachment on a collateral issue and impermissible character evidence of defendant's allegedly deceptive act of calling Priest at home without logging the call.
Again, we need not resolve the city's arguments in support of the trial court's rulings because even if the trial court erred in admitting the challenged evidence, defendant was not significantly prejudiced by the testimony. Rose's testimony arguably established only that defendant was unfamiliar with office policy which required that contacts with property owners be recorded. Moreover, even if defendant incurred some prejudice, the result of the trial would not clearly have been otherwise but for the admission of Rose's testimony, particularly in light of (1) the uncontested testimony of Blades, noted above, and (2) Rose's admission during cross-examination that other history sheets existed for the property at issue, thus suggesting defendant's call may have been logged elsewhere. Further, although Rose contradicted defendant's testimony, defendant introduced testimony substantially similar to his own from Priest on cross-examination. For the foregoing reasons, defendant's third argument under the first assignment of error is not well-taken.
Defendant's fourth argument under the first assignment of error asserts the prosecution improperly questioned defendant on cross-examination about the nature of prior charges Vance filed against defendant. Although defendant admitted Vance had filed charges against him in the past, his counsel objected when the prosecution asked about the nature of the charges. The trial court sustained defendant's objection and the prosecution withdrew the question, but defendant nonetheless contends he was prejudiced by the evidence that Vance previously filed charges against him.
Vance's filing charges against defendant "in the past" was already in the record, as defendant stipulated during Vance's testimony that she had filed telephone harassment charges against him. Defendant's response to the prosecution's question subject of defendant's objection, if allowed, would have revealed the existence and nature of other charges Vance filed, if any. Because the court, however, sustained defendant's objection prior to defendant's response, defendant suffered no prejudice from the question alone. Indeed, the trial court instructed the jury to disregard for evidentiary purposes statements made by attorneys, and to refrain from speculating about the answer had the court allowed it. Accordingly, defendant's fourth argument under the first assignment of error is not well-taken.
Defendant's fifth argument under the first assignment of error challenges Vance's testimony that she feared defendant and defendant's manipulative, retaliatory behavior toward her and her family. Defendant contends that Vance's testimony constituted improper character evidence designed to prove defendant acted in conformity with that character when he filed the report giving rise to the charges at issue.
Defendant could not suffer prejudice from Vance's testimony regarding his retaliatory nature, as defendant did not contest that he filed the charges against Vance in retaliation for her filing telephone harassment charges against him and for her failing to repay money she allegedly borrowed from him.
Moreover, the challenged portions of Vance's testimony arose primarily on redirect examination, after defendant cross-examined Vance concerning her contacts with defendant. Defendant inquired about Vance's contacts with him because he asserted she contacted him frequently after the relationship ended, and attacked him because she needed money. The city's redirect examination regarding defendant's inquiry on cross-examination was permissible to explain to the jury why Vance continued to associate with defendant.
Accordingly, defendant's fifth argument in support of the first assignment of error lacks merit.
Defendant's sixth argument in support of the first assignment of error challenges the testimony of Officer Priest and Sergeant Paul Schaumburg, Priest's supervisor, regarding Priest's investigation of defendant's complaint against Vance. Schaumburg testified that he authorized Priest to file falsification charges against defendant after Priest related to Schaumburg (1) facts which Priest discovered during his investigation of defendant's complaint, and (2) issues Priest discussed with legal counsel. Defendant essentially contends that Schaumburg's testimony violated Evid.R. 602 because Schaumburg lacked personal knowledge of Priest's investigation or Priest's conversation with counsel.
Whether or not Schaumburg possessed personal knowledge of the facts Priest observed during the investigation of defendant's complaint or of Priest's conversation with the prosecutor, Schaumburg testified from personal knowledge concerning his ultimate decision that charges be filed against defendant for falsification. Schaumburg authorized Priest to file the complaint and assisted Priest in typing the charges against defendant.
Defendant also argues that Priest impermissibly offered his opinion as to defendant's guilt when he testified that, based upon Blades' and Vance's statements during the investigation, defendant's goal in filing the complaint against Vance was to gain leverage against Vance in the ongoing telephone harassment case filed by Vance. Priest, however, did not offer an opinion of defendant's guilt, as Priest did not offer an opinion of the truth of defendant's version of the events underlying the complaint against Vance. Moreover, defendant conceded that he possessed a retaliatory motive for filing the complaint against Vance, thus admitting the substance of Priest's testimony at issue. As a result, defendant could not have suffered prejudice from that portion of Priest's testimony. Accordingly, defendant's sixth argument in support of the first assignment of error is not well-taken.
For the foregoing reasons, defendant's first assignment of error is overruled.
Defendant's second assignment of error asserts that the trial court erred in refusing to grant defendant a continuance for the purposes of obtaining a witness. The decision to grant or deny a motion to continue trial is within the sound decision of the trial court. State v. Butler (1994), 97 Ohio App.3d 322, 327
(citing State v. Unger (1981), 67 Ohio St.2d 65). The trial court's decision to grant or deny a motion for continuance will not be disturbed on appeal absent an abuse of discretion. An abuse of discretion connotes more than an error of law or judgment; it implies an attitude on the part of the trial court that is unreasonable, arbitrary, or unconscionable. Id. (citing State v. Powell (1990), 49 Ohio St.3d 255, 260).
Whether the trial court abuses its discretion in denying a motion for continuance depends upon the circumstances of each case "particularly * * * the reasons presented to the trial judge at the time the request is denied." Powell, supra, at 259 (quoting Ungar v. Sarafite (1964), 376 U.S. 575, 589). "The reviewing court must weigh potential prejudice against `a court's right to control its own docket and the public's interest in the prompt and efficient dispatch of justice.' Relevant factors include `the length of the delay requested; whether other continuances have been requested and received; the inconvenience to litigants, witnesses, opposing counsel and the court; whether the requested delay is for legitimate reasons or * * * dilatory, purposeful, or contrived; [and] whether the defendant contributed to the circumstance which gives rise to the request.'" Id. (quoting State v. Unger, supra, at 67-68).
After defendant rested and during the presentation of the city's rebuttal witnesses, defendant moved for a continuance of two days in order to present the testimony of Michael Lindblum, the manager of a restaurant that defendant alleged he and Vance attended on June 24, 1997. Defendant contends Lindblum's testimony would have supported defendant's version of the facts and discredited Vance's testimony that she did not voluntarily continue her contact with defendant after the alleged attack occurred.
Initially, defendant did not proffer Lindblum's alleged testimony, so we are unable to ascertain whether defendant sustained prejudice in the trial court's denying his request for a continuance. Moreover, even if Lindblum's testimony would have supported defendant's credibility and impeached Vance, the event to which Lindblum purportedly would have testified occurred after the alleged attack. Lindlbum's testimony, as characterized by defendant on appeal, thus would have provided little support for the facts underlying defendant's police report, and no basis to discredit the testimony of Blades that the attack never occurred. At best defendant would have gained an opportunity to impeach Vance's credibility on one small aspect of her overall testimony. Under the circumstances, defendant suffered minimal prejudice in having his motion for continuance denied, even if Lindblum would have testified consistently with defendant's argument on appeal.
Under the remaining elements of the Powell balancing test, defendant requested a two-day continuance after he rested, and near the end of the trial, weighing against the prompt and efficient dispatch of justice. Moreover, the need for delay did not suddenly arise from newly discovered evidence; rather, the request for a continuance arose from counsel's determination that further testimony from a disinterested witness would be helpful to bolster defendant's credibility in light of (1) Vance's contradicting defendant, and (2) the prosecutor's cross-examining defendant concerning the absence of witnesses to corroborate his testimony. See State v. Landrum (1990), 53 Ohio St.3d 107, 112, certiorari denied, 498 U.S. 1127 (discussing need for continuance arising from newly-discovered evidence versus tactical decision by counsel). Because defendant could have anticipated the need for such witnesses at an earlier point in the trial, defendant's failure to do so contributed to the circumstances that gave rise to the request for a continuance. See State v. Owens (1992),81 Ohio App.3d 412, 414-415 (regarding failure to subpoena witnesses as contributing to need for continuance).
In light of the foregoing, the trial court was not unreasonable, arbitrary, or unconscionable in denying defendant's motion for a continuance. Defendant's second assignment of error is overruled.
Defendant raises in his third assignment of error several arguments relating to the effectiveness of his trial counsel. In order to prevail on a claim of ineffective assistance of counsel, defendant must show that "counsel's performance fell below an objective standard of reasonableness and that prejudice arose from counsel's performance." State v. Reynolds (1988),80 Ohio St.3d 670, 674 (citing Strickland v. Washington (1984),466 U.S. 668). A two-prong test is used to examine claims of ineffective assistance of counsel. In order to meet Strickland's first prong, defendant must show counsel's conduct was objectively deficient, producing evidence that counsel acted unreasonably. State v. Sallie (1998), 81 Ohio St.3d 673, 674. In order to meet Strickland's second prong, defendant must prove that but for counsel's errors a reasonable probability exists that the result of the trial would be different. Sallie, supra.
Defendant first asserts that defense counsel was ineffective in failing to lodge objections to the six issues set forth in defendant's first assignment of error. As noted in our disposition of defendant's first assignment of error, the challenged evidence was either properly admitted, or if improperly admitted was not prejudicial to defendant as to create a reasonable probability that the outcome of the trial would have been different. To the extent the evidence was properly admitted, defendant fails to meet the first prong of Strickland. Moreover, in the absence of the necessary prejudice arising from improperly admitted evidence, defendant fails to meet the second prong of Strickland.
Defendant next contends his counsel was ineffective in failing to preserve for appeal a record of the hearing on the city's motion in limine. In that hearing, the trial court precluded defendant from (1) introducing evidence relating to Officer Priest's bankruptcy, or (2) referring to Priest's bias against code enforcement officers because code enforcement officers "wrecked his life into bankruptcy." (Tr. 201.) Instead, the trial court limited the parties to using that information for impeachment, and so defendant was permitted to impeach Priest concerning Priest's bias or prejudice against defendant arising from defendant's role in code enforcement investigation. Defendant has not demonstrated how additional information of Priest's bankruptcy probably would have supported a different result in the trial, even if allowed. Accordingly, apart from whether counsel's failure to preserve the record of the motion in limine hearing is deemed to be objectively deficient, defendant cannot satisfy the second prong of Strickland.
Finally, defendant challenges defense counsel's failure to object to portions of the testimony of various witnesses. Initially, defendant asserts his trial counsel was ineffective in failing to object to Priest's testimony that during his investigation Vance told him defendant had filed theft charges against her and "failed to show for prosecution." (Tr. 51.) While defendant contends that Priest's testimony constitutes impermissible other acts evidence, the challenged testimony does not demonstrate defendant falsified the prior report or that defendant was untruthful in that regard.
Although Priest's testimony constituted hearsay, defendant acknowledged that he filed the police report against Vance in retaliation for Vance's filing telephone harassment charges against him. Thus the veracity of the defendant's report was the only contested issue at trial. Because Priest's hearsay testimony suggest retaliation rather than an issue of veracity, defendant was not prejudiced to the degree that the outcome of the trial probably would have been different but for Priest's testimony. Similarly, although Priest testified to what Vance and Blades told him during the investigation, Vance and Blades offered the same information on direct examination. Defendant thus was not substantially prejudiced by Priest's testimony about that information.
Defendant further argues that his counsel was ineffective in failing to object to Vance's testimony that her trial testimony was consistent with her statement to police officers during the investigation. Vance, however, testified from her personal knowledge to the factual similarity between her testimony and her prior statements to police officials. Defendant does not specify how her testimony is inadmissible, but even if counsel was deficient for failing to object, defendant suffered minimal prejudice by the testimony.
Defendant also claims his counsel was ineffective in failing to subpoena Lindblum, the restaurant manager whose testimony provided the basis for defendant's motion for continuance. "Debatable trial tactics, such as the decision not to call certain witnesses, generally will not sustain a claim of ineffective assistance of counsel." State v. Bowling (Apr. 28, 1998), Franklin App. No. 97APA07-887, unreported (1998 Opinions 1324), appeal not allowed, 83 Ohio St.3d 1416 (citing State v. Phillips (1995), 74 Ohio St.3d 72, 85). Moreover, as noted, because defendant did not proffer Lindblum's testimony, the record does not contain any indication that Lindblum would have corroborated defendant's assertion that he and Vance attended Lindblum's restaurant. We thus are unable to discern from this record whether defendant actually was prejudiced by counsel's failure to secure Lindblum as a witness prior to resting defendant's case-in-chief. Moreover, as discussed in our disposition of defendant's second assignment of error, even if Lindblum's testimony would have supported defendant's version of the events that occurred after the attack, defendant suffered minimal prejudice.
For the foregoing reasons, defendant's third assignment of error is overruled.
Having overruled all three of defendant's assignments of error, we affirm the judgment of the trial court.
Judgment affirmed.
LAZARUS, P.J., and DESHLER, J., concur.